No. 3--97--0585

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

                                

MARION D. BRILE, as Surviving   ) Appeal from the Circuit Court

Spouse and Administrator        ) of Du Page County.

for Her Next of Kin,       )

Christopher Brile, Deceased,    )

         )

                                )

Plaintiff and Third-party  )

Plaintiff-Appellant        )

v.                              ) No. 94--L--619

                                )

THE ESTATE OF MATTHEW BRILE,    )

Deceased, and MATTHEW BRILE,    )

Personally,                     )

                                )

Defendants                 )

)

(Daniel Minter, as Special )

Administrator for the Estate of )

Matthew Brile, Deceased, Third- )

party Plaintiff-Appellant; and  )                              

Federal Insurance Company,      )

Incorrectly Named as The CHUBB  ) Honorable

Group of Insurance Companies,   ) Edward R. Duncan, Jr.,

Third-party Defendant-Appellee).) Judge, Presiding.                _________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Marion D. Brile, as surviving spouse and as administrator for her next of kin, Christopher Brile, deceased, filed a wrongful death action against her son, Matthew Brile, deceased, arising from a vehicular accident that occurred while Matthew was driving and Christopher was riding with him as a passenger.  Thereafter, Marion, as administrator of Christopher’s estate, and Daniel Minter, as special administrator of Matthew’s estate, filed this declaratory judgment action against the third-party defendant, Federal Insurance Company (Federal), seeking a declaration that a certain policy of insurance issued by Federal to Christopher’s employer, Photocomm, Inc. (Photocomm), afforded coverage to Matthew.  The parties filed cross-motions for summary judgment in the declaratory judgment action.  The trial court granted summary judgment for Federal.  The third-party plaintiffs (the plaintiffs) appeal from that ruling.

FACTS

The parties do not contest the facts presented to the trial court.  The record reveals that Christopher began working for Photocomm at its Downers Grove, Illinois, office in January 1991, as a marketing representative.  He worked in that office with one other employee.  The office contained sales and promotional literature, marketing props, demonstration models, and customer files.

In 1992, Myron Anduri, Photocomm’s vice-president of sales, decided to close the Downers Grove office.  As part of that decision, Anduri offered Christopher a promotion that involved a relocation from Chicago to Denver.  Anduri decided to offer Christopher the relocation for two reasons.  First, Photocomm had a much greater need in Denver than Chicago for someone of Christopher’s talent, and, second, Photocomm viewed him as a very promising employee.

In June 1992, Christopher accepted the offer to transfer from Chicago to Denver.  Anduri and Christopher agreed on a plan that required Christopher to vacate and close the Downers Grove office in September 1992 and begin working in Denver at that time.  Under the plan, the Brile family would remain in Chicago until February 1993 and then move to Denver.  After some delays, Christopher vacated the Downers Grove office as of September 25, 1992.  He was scheduled to begin work in Denver on Monday, September 28, 1992.

As part of the transfer, Anduri prepared a relocation package for Christopher, which provided that Photocomm would pay for Christopher’s direct and indirect moving expenses.  Photocomm asked Christopher to close the Downers Grove office and to pack and ship the contents of the office to Denver, including the inventory, marketing materials, equipment and customer files.  The shipment of the customer files was the most important concern for Photocomm since it considered them to be important assets.  Normally, Photocomm would package and ship the contents of the office by common carrier.  However, shipping by common carrier was expensive and difficult.  So Photocomm decided that Christopher would rent a truck and move the contents of the office, along with enough personal items to allow him to begin working in the Colorado office.  Anduri agreed to reimburse Christopher for the truck rental for this “dual purpose.”  Anduri did not consider the cost of the rental truck as one of Christopher’s moving expenses, but, rather, he considered it a company expense to move a company product.

Christopher was responsible for choosing the rental company and reserving and renting the truck.  On the morning of September 24, 1992, Marion dropped off Christopher at the rental dealer.  Christopher entered into a rental agreement using his own name and address.  He paid for the rental truck by using his personal credit card.  Photocomm’s name did not appear on the rental agreement.

After renting the truck, Christopher took the empty truck to Photocomm’s office where he loaded everything remaining in the office.  From there, Christopher went to a family storage unit where he loaded some personal items on the truck.  At this point, the truck was one-quarter to one-third full.  Christopher then went to his home and loaded some more personal items onto the truck.

Anduri knew that Christopher was to leave Chicago on Saturday, arrive in Denver on Sunday evening, and then begin work on Monday morning.  Since Christopher was a salaried employee, Photocomm did not intend to pay him any additional money for his time in traveling.  It considered Christopher’s relocation travel to be part of his responsibilities for which he was being compensated through his salary.  Photocomm considered Christopher to be within the scope of his employment with Photocomm while on the drive from Chicago to Denver.

Christopher left for Denver at 7 p.m. on Saturday, September 26, 1992.  He decided to drive all night and take his son Matthew along to help with the driving.  About 8 a.m., on September 27, 1992, Matthew was driving when their vehicle was involved in a one-car accident, killing both Christopher and Matthew.  Christopher had not informed Photocomm that Matthew would accompany him or drive on the trip.

Following the accident, Anduri was informed that the contents of the truck had been strewn along the highway and then placed in a warehouse in Nebraska.  Anduri was tremendously concerned about the customer files that had been on the truck.  He sent Chris Pinelli, a Photocomm employee, to salvage Photocomm items that had been on the truck, especially the customer files.  Pinelli eventually traveled to Nebraska, loaded the salvageable Photocomm property, and returned it to Photocomm.  Photocomm reimbursed Marion for her husband's expenses for August and September 1992. 

FEDERAL’S INSURANCE POLICY LANGUAGE

Section II of the policy, the liability coverage section, provides in relevant part:

“We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or “property damage” to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.”

At the beginning of the policy it states “[t]hroughout this policy the words “you” and “your” refer to the Named Insured shown in the Declarations *** Other words and phrases that appear in quotation marks have special meaning.”

The definitions section of the policy defines “Insured” as “any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage.”  The “WHO IS AN INSURED” provision states:  

“The following are 'insureds':                                a.  You for any covered 'auto'

b.  Anyone else while using with your permission a covered 'auto' you own, hire or borrow ***.”

The “EXCLUSIONS” provision of the policy provides in relevant part:

“This insurance does not apply to any of the following:                           ***                                       4.  EMPLOYEE INDEMNIFICATION AND EMPLOYERS LIABILITY    'Bodily injury' to:                                           a.  An employee of the 'insured' arising out of and in the course of employment by the 'insured' ***.”

ISSUES AND ANALYSIS

The following issues are presented by this appeal: (1) whether Matthew was an “insured” within the meaning of the “WHO IS AN INSURED” provision of the policy; and (2) if so, whether the exclusion provision quoted above should be construed to bar coverage of Matthew.  With respect to the second issue, the trial court found that the term “the insured” referred to Photocomm, the policyholder, and not Matthew, even though he was the person against whom liability was asserted and for whom insurance coverage was sought.

Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2--1005(c) (West 1996).  All evidence is construed in the light most favorable to the nonmoving party and strictly against the moving party.  
Lestos v. Century 21-New West Realty
, 285 Ill. App. 3d 1056, 1062 (1996).

The construction of an insurance policy is a question of law subject to 
de
 
novo
 review.  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479-80 (1997).  In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement.  
Koloms
, 177 Ill. 2d at 479.  To that end, terms utilized in the policy are accorded their plain and ordinary meaning (
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108 (1992)) unless specifically defined in the policy, in which case they will be given the meaning as defined in the policy.  In addition, a court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract.  
Koloms
, 177 Ill. 2d at 479.  Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer.  
Koloms
, 177 Ill. 2d at 479; 
National Union Fire Insurance Co. v. Glenview Park District
, 158 Ill. 2d 116, 122 (1994).  Moreover, all doubts and ambiguities in the policy language must be construed in favor of the insured.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74 (1991).

Turning to the question of whether Matthew was an “insured” under the Photocomm policy, we note that the “WHO IS AN INSURED” provision of the policy provides that 
anyone
 is an insured who uses with Photocomm’s 
permission
 a covered auto owned, hired, or 
borrowed
 by Photocomm.  Federal argues that Matthew was not using the vehicle at the time of the accident with Photocomm’s permission and therefore coverage is precluded on that basis.  We disagree.

It has been held that “ 'where an insurer elects to include in its policy a broad provision extending liability coverage to persons operating or using a car with the permission of the owner, a further grant of permission from the initial permittee need not be shown in order to invoke the coverage.' ”  
Western States Mutual Insurance Co. v. Verucchi
, 66 Ill. 2d 527, 531 (1977), quoting  
United States Fidelity & Guaranty Co. v. McManus
, 64 Ill. 2d 239, 243 (1976).  Here, Christopher had the permission of Photocomm to rent the vehicle in order to move the contents of its office to Denver.  We find that the permission given by Photocomm to Christopher extended to Matthew.

Federal further argues that Photocomm did not “own, hire or borrow” the vehicle that Matthew was driving at the time of the accident.  

Black’s Law Dictionary defines “borrow” as “[t]o solicit and receive from another any article of property, money or thing of value with the intention and promise to repay or return it or its equivalent.”  Black’s Law Dictionary 185 (6th
 ed. 1990).  In the instant case, Photocomm received a thing of value in that it obtained the means to transport its office items and customer files across country in a cheaper and more convenient manner.  Photocom also intended and promised to repay Christopher for placing payment for the vehicle on his credit card.  Thus, we find that Photocomm “borrowed” the vehicle within the meaning of the Federal policy.  Accordingly, we find that Matthew fits the definition of an “insured” under the policy in that he used with Photocomm’s permission a covered auto that Photocomm borrowed.

We next consider whether the exclusion provision is applicable here, which bars coverage in instances of “ '[b]odily injury' to *** [a]n employee of the 'insured' arising out of and in the course of employment by the 'insured' ***.”  Federal argues and the trial court found that Photocomm is “the insured” for purposes of this provision.  The plaintiffs, on the other hand, argue that Matthew is “the insured” referred to in that provision because he is the person against whom liability is asserted and for whom insurance coverage is sought.

Initially, we note that the use of the phrase “an insured” in an exclusionary clause unambiguously means “any insured,” (
Allstate Insurance Co. v. Smiley
, 276 Ill. App. 3d 971, 979 (1995)) while the use of the term “the insured” in an exclusionary clause is meant to refer to a definite, specific insured (
Smiley
, 276 Ill. App. 3d at 980 (1995)).  Thus, the term “the insured” cannot refer to both Matthew and Photocomm.  If the term “the insured” refers to Matthew rather than Photocomm, coverage would exist in this case since Christopher was not an employee of Matthew, and Christopher’s bodily injury did not arise out of and in the course of any employment by Matthew.

In 
Smiley
, the Smileys procured homeowners’ insurance from Allstate.  Later, Helene Smiley purchased a personal umbrella policy from Allstate. During the course of Helene's operation of a small day-care business, a small child drowned on the property. The child’s estate sued Helene and her husband, David.  Allstate brought a declaratory judgment to construe the policies, including the personal umbrella policy that excluded coverage for bodily injury “arising out of the past or present business activities of 
an insured person
.”  (Emphasis added.)  
Smiley
, 276 Ill. App. 3d at 974.  First, the court found that the child’s injuries arose out of Helene’s business activities and were not covered by the policy.  The court then found that the language in the exclusion also barred coverage for David’s alleged negligence.  This was because, even though the injury did not arise out of his business activities, the phrase “an insured” is construed to mean “any insured,” and the injury arose out of the business activities of Helene, who was also an insured.  
Smiley
, 276 Ill. App. 3d at 979-80.  The court continued by noting that, if the policy had excluded coverage only for the business activities of “the insured,” it would likely have held that coverage would exist for David’s alleged negligence because the exclusions only referred to the specific insured who engaged in the business activities.  
Smiley
, 276 Ill. App. 3d at 980.

Applying 
Smiley
 to the present case, we find that the phrase “the insured” in the Federal policy refers to the insured against whom liability is asserted and for whom coverage is sought.  If Federal is correct in its contention that “the insured” always means the named policyholders, the 
Smiley
 court would have applied the exclusion with respect to David regardless of whether the policy read “an insured” or “the insured.”

Furthermore, Federal does not offer any explanation for the fact that its policy specifically states that the words “you” and “your” refer to Photocomm, the named insured shown in the declarations, whereas other words and phrases that appear in quotation marks such as “insured” have special meaning, referring the reader to the definitions section of the policy.  Our conclusion is further supported by the fact that Federal could have resolved any ambiguity with respect to the exclusion’s application in its favor by simply inserting the words “your” and “you” in place of “the insured.”  We also note that there are numerous other instances throughout the policy where the term “the insured” appears that could not be reasonably interpreted to mean the policyholder.  In contrast, it is reasonable to interpret “the insured” throughout the policy as the person or organization for whom coverage is sought, provided that the person or organization fits the definition set forth in the “WHO IS AN INSURED” provision.

Federal cites 
Unigard Insurance Co. v. Whitso Inc.
, 195 Ill. App. 3d 740 (1990), 
Midland Insurance Co. v. Bell Fuels, Inc.
, 159 Ill. App. 3d 780 (1987), and 
Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.
, 146 Ill. App. 3d 434 (1986), for the proposition that Illinois courts have applied similar employment exclusions to preclude coverage for injuries arising in the course of employment.  We find, however, that Federal’s reliance on those cases is misplaced.  In each of those cases, there was no issue as  to the entity referred to as “the insured,” since in each case liability was asserted against the employer/policyholder (either directly or by way of a third-party action for indemnification or contribution).  Thus, in each case the employer/policyholder was the party for whom coverage was sought.  The courts noted that the exclusion in question was designed to preclude coverage in those areas normally covered by workers' compensation insurance; there is no reason to secure double coverage.  See 
Beautiful Signs, Inc.
, 146 Ill. App. 3d at 436.

In the instant case, the policyholder named in the declarations is not seeking coverage under the policy.  Nor is there a chance of double recovery as suggested by Federal.  Section 5(b) of the Workers’ Compensation Act provides that an “employer may have or claim a lien upon any award, judgment or fund” out of which an employee might be compensated from a third party for injuries in a case such as the present one.  820 ILCS 305/5(b) (West 1996).  In the event Christopher’s estate obtained an award in a workers’ compensation action against Photocomm, Photocomm would have a claim or lien on any amount recovered by Christopher’s estate in the lawsuit against Matthew’s estate.

For the foregoing reasons, we find that as a matter of law Matthew was “an insured” under the Federal insurance policy and that the exclusion discussed above did not operate to bar coverage for Matthew’s alleged negligence.  Accordingly, we reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded.

GEIGER, P.J., and McLAREN, J., concur.