COUNTRY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. FEDERATED MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 4—00—0174

Argued August 23, 2000.—Opinion filed September 7, 2000.

Beth C. Boggs, Robert P. Sass, and Michael J. Lach (argued), all of Boggs, Backer & Bates, L.L.C., of St. Louis, Missouri, for appellant.

Daniel L. Johns (argued), of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

Defendant, Federated Mutual Insurance Company (Federated), ap-

peals an order of the circuit court of Sangamon County granting summary judgment to plaintiff, Country Mutual Insurance Company (Country Mutual), in a declaratory judgment action.

## I. BACKGROUND

In January 1997, Country Mutual issued an automobile insurance policy naming Scott Clark as one of its insureds. On February 17, 1997, Scott's father, Patrick, delivered Scott's 1996 Chevrolet truck (Leased Truck) to Smoky Jennings Chevrolet (Jennings) for the purpose of obtaining repairs. Patrick took from Jennings a 1995 GMC Sierra pickup truck (Loaned Truck) to be used while the Leased Truck was being repaired. Several days later, Scott was involved in an automobile accident while driving the Loaned Truck. In January 1998, the driver of the other vehicle, Susanne Howard, filed a lawsuit against Scott and Jennings. Country Mutual tendered the defense of Scott to Federated, Jennings' insurer, on the basis that Federated's policy obligated it to provide primary coverage for the claims made by Howard. Federated denied coverage and Country Mutual provided a defense to Scott in Howard's lawsuit under a reservation of rights. Thereafter, Country Mutual filed its complaint for declaratory judgment. Federated filed a counterclaim requesting declaratory judgment in its favor.

Both parties filed motions for summary judgment. Federated's motion alleged that, at the time that he took the Loaned Truck from Jennings' place of business, Patrick signed an "Assumption of Liability Agreement" (Agreement). That document provided in part that the Loaned Truck was to be driven and used exclusively by and for the accommodation of Patrick and that the Loaned Truck "will be preserved and fully protected from all loss, injury[,] or damage, and any loss, damage, injury, and all expense of maintenance shall be borne by [Patrick] and [Patrick] hereby agrees to indemnify and hold harmless said dealer for all such, and for any claim or claims of personal injury or property damage to others or to [Patrick] arising out of the use or operation of [the Loaned Truck]." The Agreement also stated that Patrick represented that (1) the Leased Truck was covered by public liability, collision, and property damage insurance, (2) such insurance is applicable to the Loaned Truck, and (3) in the event such insurance "be ineffectual" on the date of any accident, Patrick agreed to assume full liability for all loss, damage, or injury to the Loaned Truck, and all liability that may arise out of any accident or collision for damages or injuries to the person or property of any third person.

Federated alleged that, under the terms of Jennings' policy, Scott was not an "insured." It cited provisions of its policy excluding from coverage Jennings' customers who used a covered vehicle without Jen-

nings' permission. Federated maintained that since Scott lacked permission from Jennings to use the Loaned Truck, he was not an "insured" under Federated's policy.

In its motion for summary judgment, Country Mutual alleged that Scott was an insured under Federated's policy, because he had Jennings' permission to use the Loaned Truck. Country Mutual alleged that it was Scott who made the arrangements with Jennings to borrow the Loaned Truck while the Leased Truck was being repaired. Country Mutual also alleged that, under Illinois law, once a named insured gives permission to an initial permittee to use the covered vehicle, that permission extends to subsequent users of the vehicle absent theft or tortious conversion. As Country Mutual's policy provides only excess coverage to Scott on a vehicle not owned by him, and Federated's policy provides primary coverage to vehicles owned by Jennings, Federated's coverage is primary. Country Mutual also alleged that, under the law, a liability policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission.

Attached to Country Mutual's motion were affidavits of Scott and Patrick. In his affidavit, Scott stated that (1) since January 30, 1996, he has been employed by Clark Grain Farms; (2) in February 1996, Patrick assigned to him the Leased Truck for his use and Scott secured insurance in his name from Country Mutual on the Leased Truck; (3) in January 1997, he struck a deer while driving, causing damage to the Leased Truck; (4) prior to February 17, 1997, he called Jennings' employee, Doug Brown, and scheduled an appointment to drop off the Leased Truck and arranged to obtain a vehicle from Jennings to use while the Leased Truck was being repaired; (5) on February 17, 1997, he was busy at work and he asked Patrick to take the Leased Truck to Jennings and pick up the Loaned Truck; and (6) Patrick gave the keys to the Loaned Truck to him and he continued to drive the Loaned Truck and was driving it at the time of his accident with Howard.

Patrick's affidavit stated that (1) on January 30, 1996, he leased the Leased Truck from Jennings; (2) Jennings had previously leased trucks to him for use in his business and was informed by him that the Leased Truck would be used in his business and would be operated by his employees; (3) he assigned the Leased Truck to Scott, his employee, for his use; Scott was to personally pay for its maintenance and insurance; (4) on February 17, 1997, at Scott's request, he delivered the Leased Truck to Jennings for repairs; (5) on that date, at Scott's request, he picked up the Loaned Truck for Scott's use while the Leased Truck was being repaired; (6) he explained to Jennings' service department personnel that he was dropping off the

Leased Truck and picking up the Loaned Truck for Scott; (7) on that date, he delivered the Loaned Truck to Scott for his use and gave the keys to him; and (8) Scott had his express permission to use the Loaned Truck.

On November 30, 1999, the trial court entered a written order denying Country Mutual's motion for summary judgment and awarding summary judgment to Federated on the complaint and counterclaim. In doing so, the court noted that Scott was not an "insured" under Federated's policy because he had insurance equal to or greater than the amount required by law. The court also stated that whether Scott had permission to use the Loaned Truck was of no consequence. Neither Patrick nor Scott was an "insured" under Federated's policy.

On December 17, 1999, Country Mutual filed a motion to vacate the trial court's order and for rehearing and reconsideration of the motions for summary judgment. It alleged that the customer exclusion clause of Federated's policy was unenforceable under Illinois law, citing cases involving persons who test-drive vehicles belonging to car dealerships. On January 26, 2000, the trial court entered a written order, allowing Country Mutual's motion to vacate its order granting summary judgment to Federated. In the order, the court cited a decision of this court in *Pekin Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 305 Ill. App. 3d 417, 420-21, 711 N.E.2d 1227, 1230 (1999), holding that persons who test-drive vehicles owned by automobile dealers must be covered by the dealers' insurance policies and that prior precedent established that the vehicle owner's insurance is primary and the operator's insurance constitutes excess coverage. The trial court in the instant case found that this decision also applied to loaned vehicles. As to the issue of permissive use, the court noted that the affidavits of Scott and Patrick established that Scott arranged to take the Leased Truck to Jennings for repair and to use the Loaned Truck on a temporary basis and that he sent Patrick to make the exchange. Although Patrick signed the Agreement, which provided that the Loaned Truck was for his own exclusive use, the language of Federated's policy extends coverage to those who drive the Loaned Truck with Patrick's permission. The trial court found that the Agreement was unenforceable, citing the *Pekin* case as authority for holding that Federated, as Jennings' insurer, had the primary responsibility to cover damages resulting from the accident. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is proper only where the pleadings, deposi-

tions, and affidavits demonstrate that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). Accordingly, where reasonable persons could draw different inferences from the undisputed material facts or where a dispute exists as to a material fact, summary judgment should be denied and the issue decided by the trier of fact. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114, 649 N.E.2d 1323, 1326 (1995). In determining whether the trial court properly granted summary judgment, the standard of review is *de novo*. *Espinoza*, 165 Ill. 2d at 113, 649 N.E.2d at 1326.

## B. Permissive Use of Loaned Truck

Federated argues on appeal that Scott was not a permissive user of the Loaned Truck and therefore was not an "insured" under Jennings' insurance policy. It relies on the Agreement signed by Patrick, in which he stated that the Loaned Truck was for his exclusive use. It also notes that the Agreement stated that the Leased Truck was covered by insurance and that this insurance would also cover the Loaned Truck. Accordingly, Federated's position is that the Agreement bound Patrick to provide insurance coverage for the Loaned Truck. Thus, according to Federated, the insurance policy it issued to Jennings provides only excess coverage and Scott's insurer, Country Mutual, must provide primary coverage.

■ Jennings' policy contains what is known as an "omnibus clause" that extends coverage to persons who use the owner's vehicle with the permission of the named insured. *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 182 Ill. 2d 240, 243-44, 695 N.E.2d 848, 850 (1998). The omnibus clause in Jennings' policy contains exceptions to coverage for Jennings' customers and provides in pertinent part as follows:

"a. The following are 'insureds' for covered 'autos':

(1) You for any covered 'auto'.

(2) Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

\* \* \*

(d) Your customers, if your business is shown in the Declarations as an 'auto' dealership. However, if a customer of yours:

(i) Has no other available insurance (whether primary, excess or contingent), they are an 'insured' but only up to the compulsory or financial responsibility law limits where the covered 'auto' is principally garaged.

(ii) Has other available insurance (whether primary, excess or contingent) less than the compulsory or

financial responsibility law limits where the covered 'auto' is principally garaged, they are an 'insured' only for the amount by which the compulsory or financial responsibility law limits exceed the limit of their other insurance."

The parties do not dispute any of the material facts of the case. The affidavits presented to the trial court by Country Mutual with its motion for summary judgment establish that Scott himself made the arrangements for repair of the Leased Truck and use of the Loaned Truck while he was without a vehicle. Patrick made the exchange as an accommodation to Scott. Patrick's affidavit establishes for summary judgment purposes that he communicated to Jennings' service department personnel that he was dropping off the Leased Truck and picking up the Loaned Truck for Scott. Patrick's affidavit also establishes that he gave Scott permission to drive the Loaned Truck.

■ Illinois courts follow the "initial permission" rule, which states that if the named insured has initially given permission to another to use the insured vehicle, departure from the authorized use does not terminate the initial permission. *Maryland Casualty Co. v. Iowa National Mutual Insurance Co.*, 54 Ill. 2d 333, 341-42, 297 N.E.2d 163, 167-68 (1973). The rule is based on the theory that the insurance contract is as much for the benefit of the public as for the insured and that it is undesirable to permit litigation over the details of the permission and use of the covered vehicle. *Maryland Casualty*, 54 Ill. 2d at 342, 297 N.E.2d at 168.

In *Brile v. Estate of Brile*, 296 Ill. App. 3d 661, 695 N.E.2d 1309 (1998), an employee, at the direction of his employer, rented a truck to transport business materials to another state. The employer had agreed to pay all expenses, including the truck rental. Without the employer's knowledge, the employee took his son with him on the trip. While the son was driving the truck, an accident occurred and the employee and the son were killed. The employer's insurer refused to provide a defense against a wrongful death action brought on behalf of the employee's estate against the son's estate. The insurer claimed that the son was not an "insured" under the policy, because he did not have permission from the employer to drive the truck. The employee's estate filed a declaratory judgment action against the insurer. The trial court granted summary judgment to the insurer. *Brile*, 296 Ill. App. 3d at 663-64, 695 N.E.2d at 1310-11.

On appeal, the appellate court noted that the omnibus clause in the employer's policy covered anyone who, with the employer's permission, used a covered auto owned, hired, or borrowed by the employer. The court rejected the insurer's argument that, since the son lacked permission from the employer to drive the truck, he was not an insured

under the policy. The court noted prior cases holding that, under such omnibus clauses, a further grant of permission from the initial permittee need not be shown for coverage to apply. Since the employee had the employer's permission to rent the vehicle for the benefit of the employer, the permission given by the employer extended to the son. *Brile*, 296 Ill. App. 3d at 666, 695 N.E.2d at 1312-13.

The *Brile* court relied on an earlier opinion by the Supreme Court of Illinois in *Western States Mutual Insurance Co. v. Verucchi*, 66 Ill. 2d 527, 363 N.E.2d 826 (1977). In that case, the owner of a car gave his son permission to drive the car on the night in question. The owner had previously instructed his son never to permit anyone else to drive the car. A friend of the son drove the car and was involved in an accident. In a declaratory judgment action, the owner's insurer maintained that the friend was not an insured under the owner's policy because he lacked permission to drive the car. The circuit court found the owner's insurer had the duty to provide primary coverage.

■ The appellate court held that the owner's insurer was not liable and that the driver's insurer was primarily liable. On further appeal, the supreme court reversed this holding, citing precedent that applied the initial permission rule in similar situations. Thus, where an insurer elects to include in its policy a broad provision extending liability coverage to persons operating a car with the owner's permission, a further grant of permission need not be shown to invoke coverage, unless the insurer can prove that the operator of the car obtained possession by a theft or tortious conversion. *Verucchi*, 66 Ill. 2d at 531, 363 N.E.2d at 827-28.

Accordingly, we hold that Scott was a permissive user of the Loaned Truck and was therefore an "insured" under Jennings' insurance policy.

## C. Effect of Policy Language and Agreement

Jennings' policy expressly provides primary insurance to a person who qualifies as an insured under the policy. Country Mutual's policy states that any insurance it provides with respect to a vehicle not owned by the insured will be excess over any other collectible insurance. Country Mutual argues that these policy provisions are compatible and that Federated must provide primary coverage to Scott. However, Federated's policy language quoted above provides that Federated is the excess insurer in the event that Jennings' customers are covered by other insurance.

■ In addition to relying on this court's decision in *Pekin*, Country Mutual cites cases involving accidents during test drives of vehicles. For example, in *Universal Underwriters*, the question was whether a

car dealer's garage insurance policy covered the liability of a separately insured customer who was involved in an accident while test-driving one of the dealer's vehicles. State Farm, the driver's insurance company, paid claims arising from the accident and submitted a claim to the auto dealer's insurer, Universal, which denied coverage. A declaratory judgment action ensued in which the trial court granted summary judgment to State Farm. The appellate court affirmed. On further appeal, the supreme court affirmed, finding that under Illinois law, an auto dealer's liability insurance policy must provide coverage for test-drivers and that the test-driver in that case was an "insured" under Universal's policy. The court found that section 7—317(b) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/7—317(b) (West 1996)) requires that omnibus clauses be included in every policy of motor vehicle liability insurance. The court noted that the general custom in the auto insurance industry is that the owner's insurance provides primary coverage. In the absence of any language qualifying the mandate of section 7—317 of the Vehicle Code, the statute must be construed to require primary coverage. Any provision in a policy to the contrary would violate the public policy of the state as expressed in the Vehicle Code. The court thus rejected Universal's argument that it need only provide excess coverage. Accordingly, the supreme court found that the test-driver in that case was an "insured" under the auto dealer's policy. *Universal Underwriters*, 182 Ill. 2d at 245-46, 695 N.E.2d at 850-51.

Section 7—317(b)(2) of the Vehicle Code (625 ILCS 5/7—317(b)(2) (West 1998)) requires a vehicle owner's insurance policy to insure the person named therein and any other person using or responsible for the use of the insured vehicle with the express or implied permission of the insured.

The language in Federated's policy purporting to exclude Scott from coverage because of the existence of his separate insurance coverage is identical to the language in the insurance policy at issue in *Pekin*. There, Saylor was test-driving a vehicle belonging to Sullivan Chevrolet when she was involved in an accident. The driver sued Saylor, and her insurance company, State Farm, tendered her defense to Pekin, Sullivan's insurer. Pekin accepted the defense with a reservation of rights. It filed a declaratory judgment action seeking to hold State Farm responsible for the costs of Saylor's defense. Both parties filed motions for summary judgment. Pekin alleged that Saylor's insurance policy satisfied the minimum requirements of Illinois law, and she was thus excluded from coverage under the language of Sullivan's policy. State Farm argued that Pekin was primarily obligated to defend Saylor regardless of its policy language, relying on the supreme court's

decision in *Universal Underwriters*. The trial court granted summary judgment to State Farm, finding that Pekin was required to provide primary coverage to Saylor. *Pekin*, 305 Ill. App. 3d at 417-18, 711 N.E.2d at 1228.

On appeal, Pekin argued that the trial court failed to consider the plain language of Sullivan's insurance policy and that it and Sullivan were free to define their obligations as they wished. This court found *Universal Underwriters* controlling. The language in Sullivan's policy excluding Saylor from coverage was unenforceable because it contradicted the mandatory language of section 7—317(b) of the Vehicle Code. Thus, Sullivan's policy must insure Saylor regardless of the language contained therein. We also determined that, pursuant to *Universal Underwriters*, Pekin's policy must provide primary coverage to any person permitted by the owner to use the vehicle. *Pekin*, 305 Ill. App. 3d at 420-21, 711 N.E.2d at 1230.

Federated seeks to draw a distinction between situations involving test-drives and those involving loaner vehicles. It argues that test-drives tend to be of short duration and drivers are often accompanied by agents of the owner, whereas loaned vehicles may be driven for several days and are potentially subject to greater risks that are beyond the owner's control. In addition, according to Federated, given financial responsibility laws, it is a near certainty that a vehicle left with the auto dealer for service or repair is insured. The same is not true in a test-drive situation where it is unknown whether the driver owns a vehicle.

We disagree with Federated's argument. Since auto insurance policies are as much for the benefit of the public as for the insured, it would appear that there is a greater need for primary coverage by the owner's insurer in loaned vehicle situations, as the public is at greater risk in such cases. In any event, Federated's argument must be rejected, because the supreme court has held that public policy requires the insurer of the vehicle owner to provide primary coverage to a driver who has permission to use the owner's car. No exceptions have been made to this requirement.

Federated cites section 6—305 of the Vehicle Code (625 ILCS 5/6—305 (West 1998)), which sets forth requirements for renting a vehicle to another person. Subsection (h) of that section excepts persons licensed as new car dealers from the requirements of section 6—305 as follows:

> "(h) A person licensed as a new car dealer under [s]ection 5—101 of this Code shall not be subject to the provisions of this [s]ection regarding the rental of private passenger motor vehicles when providing, free of charge, temporary substitute vehicles for custom-

ers to operate during a period when a customer's vehicle, which is either leased or owned by that customer, is being repaired, serviced, replaced[,] or otherwise made unavailable to the customer in accordance with an agreement with the licensed new car dealer or vehicle manufacturer, so long as the customer orally or in writing is made aware that the temporary substitute vehicle will be covered by his or her insurance policy and the customer shall only be liable to the extent of any amount deductible from such insurance coverage in accordance with the terms of the policy." 625 ILCS 5/6—305(h) (West 1998).

Country Mutual argues that this section does not apply to liability insurance, noting the language that says the customer will only be liable for any deductible under his or her insurance policy. Since there are no deductibles for liability insurance, Country Mutual insists that this section refers only to property loss coverage on the vehicle. We agree with Country Mutual that the language of this section merely requires a new car dealer to make the customer aware of insurance coverage that already exists. The customer is not agreeing to provide any particular coverage under this section.

■ Finally, Federated argues that Jennings and Patrick contractually agreed that Patrick's insurance would constitute the primary coverage in the event of a loss and we should give effect to this agreement. The language in the Agreement to this effect is contrary to the public policy of this state as articulated by our supreme court. An insurer may not provide in its insurance policy that it will extend only excess coverage to a driver who uses the owner's vehicle with permission. The insured and its customer may not be allowed to do so by contract, thus accomplishing for their insurers what the insurers may not themselves accomplish. The language of the Agreement, to the extent that it contravenes public policy, is unenforceable.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's grant of summary judgment to Country Mutual.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.