JOHN DEERE INSURANCE
COMPANY, Appellee,

v.

DE SMET INSURANCE COMPANY
OF SOUTH DAKOTA,
Appellant,

and

Milwaukee Guardian Insurance,
Inc., Appellee.

No. 01–0488.

Supreme Court of Iowa.

Sept. 5, 2002.

---

Michael W. Ellwanger of Rawlings, Nieland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, L.L.P., Sioux City, for appellant.

Alan E. Fredregill of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellee John Deere Insurance Company.

Daniel L. Hartnett of Crary, Huff, Inkster, Sheehan, Ringgenberg, Hartnett, Storm & Jensen, P.C., Sioux City, for appellee Milwaukee Guardian Insurance, Inc.

NEUMAN, Justice.

This appeal and two cross-appeals challenge the judgment entered by the district court in an action to declare the coverage obligations of three insurance companies following an automobile collision. The principal question is whether an "insured contract" was created between two of the defendants in the underlying litigation so as to alter application of the customary "other insurance" clauses contained in each policy. We conclude the "insured contract" provision applies, making two of the insurers "co-primary" carriers and requiring a prorated distribution of available coverage pursuant to their "other insurance" clauses. The third insurer's obligation for coverage is strictly excess, as found by the district court. We therefore reverse and remand on appeal, reverse on one cross-appeal, and affirm on the other.

The facts giving rise to this controversy are largely undisputed. Pedersen Machine, Inc., is in the business of selling farm implements and delivering them to its customers. Rick Ackland, a Pedersen Machine employee, was delivering a disk-ripper to a customer when the equipment, which was wider than the roadway, swung over the centerline and struck a car driven by Linda Degen. At the time of the collision, Ackland was towing the equipment with a one-ton pickup owned by one of Pedersen Machine's other employees, Donald Hubert.

Hubert's pick-up was being used by Pedersen Machine on a trial basis because Hubert was interested in selling it and Pedersen Machine's owner, Randy Bak, thought it would fit nicely into the company's fleet of towing vehicles but wanted to try it out first. Before borrowing the truck, Bak had checked with Pedersen Machine's insurer, John Deere Insurance Company (Deere), to be sure that a non-owned vehicle would be "covered" for deliveries. He was assured by a Deere representative that it would be and so advised Hubert.

Degen and her husband sued Pedersen Machine, Hubert, and Ackland for damages sustained in the collision. Deere took up the defense on behalf of Pedersen Machine. Hubert's personal auto liability carrier, De Smet Insurance Company of South Dakota (De Smet), defended both Hubert (owner of the pick-up) and Ackland (the pick-up's driver). Ackland also carried motor vehicle insurance with Milwaukee Guardian Insurance Company. Deere and De Smet eventually settled the case with Degen for $110,000. Each insurer paid $55,000 toward the settlement without prejudice to either company's right to seek reimbursement from the other. Each advanced its own defense costs.

Deere then commenced a declaratory judgment action to recover its share of the settlement and defense costs from De Smet. Following trial, the district court determined that neither Deere nor De Smet was entitled to further relief from the other. This appeal by De Smet and cross-appeals by Deere and Milwaukee Guardian followed.

### I. Issues on Appeal and Cross–Appeal.

De Smet contends the district court erred when it failed to recognize that the Deere policy, with a combined single limit of $500,000, provides primary coverage for all claims made in the case. Its argument rests largely on the contention that the agreement between Hubert and Pedersen Machine concerning coverage on the pick-up constituted an "insured contract" which, under the Deere policy, transformed the coverage available from excess to primary.

Deere contends on cross-appeal that the district court correctly rejected De Smet's "insured contract" theory but wrongly apportioned fault between the underlying defendants and should have assessed De Smet all of the defense costs. Milwaukee Guardian, whose coverage is indisputably excess to the other policies, asserts on its cross-appeal that, if Deere prevails, its liability is limited to a pro rata share of settlement proceeds paid in excess of De Smet's $100,000 limits of liability.

Our analysis of these competing arguments rests on the language used, and the obligations thereby created, by the insuring agreements at issue. *Truck Ins. Exch. v. Maryland Cas. Co.*, 167 N.W.2d 163, 164 (Iowa 1969). We therefore turn to a review of the policies before us.

### II. Insurance Provisions.

The "covered auto" under the De Smet policy is Hubert's one-ton pickup. The insuring agreement under the De Smet policy provides coverage for Hubert, as the named insured, as well as Ackland ("[a]ny person using 'your covered auto' ") and Pedersen Machine under the following paragraph:

> For "your covered auto," any ... organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

All agree this provision applies because Ackland was Pedersen Machine's employee and drove Hubert's vehicle in the

course of his employment. Thus Pedersen Machine was vicariously liable for Ackland's conduct under the doctrine of respondeat superior.

The "other insurance" clause of the De Smet policy states:

> If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

As already mentioned, De Smet's liability limit under the policy is $100,000.

That brings us to the Deere policy. Pedersen Machine is the named insured ("you") under this general liability policy covering its business. The "WHO IS AN INSURED" section of the Deere policy states:

> Anyone else is an "insured" while using with your permission a covered "auto" you own ... or borrow *except:*
>
> > (1) The owner ... from whom you hire or borrow a covered "auto."

(Emphasis added.) The record is unclear whether the declarations page of the Deere policy listed Hubert's truck as a "covered auto." But the parties seem to agree that Ackland, as a person using Hubert's borrowed vehicle with Pedersen Machine's permission, was an insured under the Deere policy.

Deere's policy also contains an exclusion for "[l]iability assumed under any contract or agreement," subject to the following exception:

> [T]his exclusion does not apply to liability for damages:
>
> > a. Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subse-

quent to the execution of the contract or agreement; or

> > b. That the "insured" would have in the absence of the contract or agreement.

An "insured contract" is defined under the policy as

> [t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Deere's "other insurance" clause states, in pertinent part:

> a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. . . .
>
> c. *Regardless of the provisions of paragraph a. above,* this Coverage Form's Liability Coverage *is primary for any liability assumed under an "insured contract."*

(Emphasis added.)

Finally, Ackland's personal auto policy with Milwaukee Guardian provides $100,000 liability coverage for him, as the named insured, when using "a car." Pertinent here is Milwaukee Guardian's "other insurance" clause:

> If there is other applicable auto liability insurance on a loss covered by this Part, we will pay our proportionate share as our limits of liability bear to the total of all applicable liability limits. Any insurance afforded under this Part for a vehi-

cle you do not own, however, is excess over any other applicable auto liability insurance.

## III. Analysis.

*A. Insured contract.* We begin by re-iterating the coverage that seems undisputed under the language contained in the pertinent policies: First, the De Smet policy provides coverage for all three defendants in the underlying lawsuit to the limit of its liability of $100,000. Second, Milwaukee Guardian's coverage is excess over any other applicable insurance because its insured, Ackland, did not own the vehicle in the collision. Third, Deere's policy insures Pedersen Machine and Ackland, its employee, for liability incurred while driving a borrowed vehicle. And, fourth, Hubert is not an "insured" under the Deere policy because he is the owner of a borrowed vehicle.

■ The question is whether, and to what extent, Pedersen Machine's agreement with Hubert regarding liability and insurance coverage on the borrowed auto brings into play Deere's "insured contract" provision. At the outset we note that the first mention of "insured contract" is found in an *exception* to an *exclusion*. Excluded under the policy is any liability assumed by an insured under a contract or agreement *unless* the contract or agreement meets three criteria: (1) it pertains to the insured's business, (2) by reason of the agreement, the insured has assumed another's tort liability to a third party and, (3) the agreement involves "tort liability," meaning "liability that would be imposed by law in the absence of any contract or agreement." The provision is important to resolution of this controversy because, unless it applies, Deere's coverage for an accident involving a non-owned vehicle

would be excess, not primary. Deere's "other insurance" clause makes plain that its coverage is primary, not excess, "for any liability assumed under an 'insured contract,'" regardless of whether the auto used by the insured is owned or non-owned.

We turn, then, to the factual record made in the district court. Randy Bak, an owner and manager of Pedersen Machine, testified about the company's interest in buying Hubert's truck conditioned on delaying the purchase until Hubert secured a replacement vehicle. The men agreed that, in the meantime, Pedersen Machine would "try out" the truck as part of its fleet. He testified that both men were concerned about liability and insurance issues while the truck was being used for Pedersen Machine deliveries. Bak, in his words, "wanted to ensure that we were covered through our John Deere insurance by using it." So he called an insurance company representative who assured him that Pedersen Machine was "covered" and so advised Hubert. Further questioning about the agreement on coverage and liability issues revealed this exchange with Bak:

Q. Do you remember the specifics? A. Basically just what I said, that I called John Deere Insurance and that we were covered.

Q. Okay. *Did you want to assure him that he didn't have to have any concerns about liability while you were using the vehicle?* A. *Yes. That would be, you know, the purpose for my call.*

Q. And did you assure him that he would not have any liability while you folks were using the vehicle? A. No specific terms. I don't believe that was stated in those terms. The discussion was I'm sure fairly short. My main

concern was that Pedersen Machine's insurance was in effect.

> Q. *Okay. And did you assume that while you folks were operating his vehicle you would have the liability if anything happened* ? A. *Yes, I assumed that.*
>
> Q. *And that your insurance would cover it* ? A. *Yes.*
>
> Q. *And you communicated that to him* ? A. *Yes.*

(Emphasis added.) Cross-examination by Deere's counsel revealed that Bak did not recall the name of the Deere representative with whom he spoke, nor was there any discussion about whose insurance, as between Hubert and Pedersen Machine, would be primary or excess.

Hubert, the only other witness, testified similarly. He recalled that Bak agreed to find out about insurance and "who was going to be liable" for the pickup while being used by Pedersen Machine. His testimony continued as follows:

> As of who he called, I don't know. But when he came back out [of his office], then he told me that as long as the John Deere employee was driving the pickup carrying out Pedersen Machine duties, Pedersen Machine was going to be liable for it.
>
> Q. Are you satisfied with that? A. Yes, then I was satisfied.
>
> Q. And based upon that, did you allow Pedersen Machine to use your vehicle in the business? A. Yes.

Based on this record, the district court recognized the existence of an oral agreement between Pedersen Machine and Hubert. The court found the agreement insufficient, however, to meet the definition of "insured contract" under the Deere policy. First, it found no connection between the agreement and Pedersen Machine's business, a critical element of the "insured contract" exception. Second, it concluded the agreement was "defective in its vagueness on a critical term," that is, whether Deere's coverage would be primary or excess to De Smet's. Finally, the court believed the agreement did not meet the common-law definition of "insured contract," that is, an agreement "to indemnify or hold another harmless for an obligation not otherwise imposed by law." *Smithway Motor Xpress v. Liberty Mut.*, 484 N.W.2d 192, 196 (Iowa 1992) (quoting *Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18, 23 (1972)).

Although we are ordinarily bound by a trial court's factual findings in a law action, *see* Iowa R.App. P. 6.4, we are frankly at a loss to reconcile these trial court findings with the record before us. As even Deere seems to concede, the agreement reached between Hubert and Bak clearly pertained to Pedersen Machine's business. The district court's observation that "test driving employee's vehicles was not a normal part of [Pedersen Machine's] business" wholly misses the point of the transaction. Plainly Pederson Machine's agreement to assume Hubert's liability while using his truck in its business fits the common meaning of the phrase "pertaining to your business" found in the definition of "insured contract" under the Deere policy. *See LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998) (undefined policy words given ordinary meaning). The record contains no basis for a contrary finding.

■ Where, as here, neither party offers extrinsic evidence about the meaning of an insurance policy's language, the construction of the policy and the interpretation of its terms are matters of law for this court to decide. *Kalell v. Mut. Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 867 (Iowa 1991). Contrary to the district court's second finding, the Deere policy's definition of

"insured contract" does not, by its terms, require specificity regarding excess or primary coverages before an agreement by an insured to assume another's tort liability will be covered. It is true, as the district court found and Deere asserts on appeal, that the law should not favor policy interpretations that permit insureds to "willy-nilly" expand coverage. But the policy language here speaks for itself and makes no mention of the limitation imposed by the district court. It is not a court's prerogative, under the guise of construction or interpretation, to insert coverage limitations the company could have, but did not, include. *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987). In other words, the fact that Hubert and Bak did not discuss—or expressly include in their agreement—excess or primary coverages is essentially irrelevant to application of the "insured contract" clause of this policy.

That brings us to the heart of the case and a question that has not previously been addressed squarely in this jurisdiction: Does an "insured contract" include an agreement to assume another's tort liability even where the liability would otherwise be imposed by law? The answer, in short, is that the insurance company is its own lexicographer and can define "insured contract" as it chooses.

It is true, as Deere contends in support of the district court's ruling, that the concept of "insured contract" generally contemplates an agreement to undertake liability "which did not exist prior to the assumption." *Lewis v. Hamilton,* 652 So.2d 1327, 1330 (La.1995); *see generally* Douglas R. Richmond and Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds,* 44 Drake L.Rev. 781, 784 (1996) [hereinafter Richmond & Black]. In *Lewis,* for example, the court held that an employ-

ment relationship between a school board and a teacher, which would ordinarily give rise to vicarious tort liability, would not constitute an "insured contract" so as to provide primary, instead of excess, coverage when a teacher—driving her own vehicle—caused an accident while in the course and scope of her employment. *Lewis,* 652 So.2d at 1330. The court reasoned that such a broad construction of the parties' employment relationship, without more, would lead to primary coverage by the employer's insurer in every case, whether or not the facts showed a separate *assumption* of liability. That would render superfluous the policy's excess provisions for non-owned vehicles. *Id.; accord Smithway Motor Xpress,* 484 N.W.2d at 196. *See also Christiansen v. Holiday Rent–A–Car,* 845 P.2d 1316, 1320 (Utah Ct.App.1992) (mere status as sublessor insufficient to satisfy "insured agreement" exclusion; sublessor must have assumed liability under agreement with insured to trigger primary coverage under "insured agreement" clause).

The critical inquiry in any case, however, is whether the agreement at issue "fall[s] within the specific policy definition" of "insured contract." *Richmond & Black,* at 783. Here, the "insured contract" definition in the Deere policy places no limits on whether the tort liability allegedly assumed would or would not rest with the insured as a matter of law. The only question posed by the policy language is whether (1) an agreement was reached, (2) pertaining to the business, (3) by which the insured (Pedersen Machine) assumed the tort liability of another for bodily injury or property damage sustained by a third party. The record undeniably supports such an agreement here and, in the absence of limiting language in its policy, Deere is bound thereby. As a result, Deere's coverage under the policy, which would normally be excess, becomes primary. The

district court's contrary interpretation of the policy must be reversed.

**B. Co-primary insurers.** We conclude from our analysis that the policies issued by both De Smet and Deere provide primary liability coverage for Ackland's collision with Degen. Milwaukee Guardian's policy is clearly excess. As noted, De Smet and Deere settled Degen's claim for $110,000. Each contributed $55,000 to the settlement. The limits of liability on the De Smet policy are $100,000; the limits on the Deere business auto liability policy are $500,000. De Smet asserts on appeal that Deere, having sufficient limits to cover the entire loss, should bear the entire loss. In the alternative, De Smet asks the court to apportion the parties' contribution to the settlement in accordance with their "other insurance" clauses.

■ De Smet's alternative argument is the correct one. When two insurance companies provide insurance on the same loss, we look to their policy language to determine their respective insurance obligations. *Truck Ins. Exch.*, 167 N.W.2d at 164. Here each company's policy calls for a pro-rata sharing of liability coverage in proportion to the total coverage available under both policies. Such a pro-rata distribution is in keeping with the general rule applicable when two insurance companies provide coverage on the same loss. *Westfield Ins. Co. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 878 (Iowa 2001); *see Ill. Nat'l Ins. Co. v. Farm Bureau Mut. Ins. Co.*, 578 N.W.2d 670, 673 (Iowa 1998) (affirming court's earlier rejection of "closer to the risk" doctrine in favor of pro-rata distribution rule). The parties concede on appeal that the policies furnish no basis for the district court's allocation of liability and costs in proportion to alleged fault among the defendants *inter se*. *See Truck Ins. Exch.*, 167 N.W.2d at 164 (respective

obligations turn on policy language, not "arbitrary rule or circumstance").

**C. Defense costs.** Deere's claim on cross-appeal that De Smet should have been assessed all the defense costs is answered by our holding in *Aid Insurance Co. v. United Fire & Casualty, Co.*, 445 N.W.2d 767 (Iowa 1989). Applying the pro rata distribution rule discussed above, we ordered a proportional division of liability *and defense costs*. *Aid Ins. Co.*, 445 N.W.2d at 771. In this case, however, Deere need not reimburse De Smet for any defense costs previously advanced because De Smet has not urged such a claim on appeal. It has merely asserted that, in the event this court finds both insurers to be primary, "[e]ach would pay their own defense costs." We therefore affirm the district court's decision to deny further relief to either party on this point.

## IV. Summary.

We reverse on De Smet's appeal, and Deere's cross-appeal, and remand to the district court for entry of a corrected judgment in accordance with this opinion. On remand, the district court must apportion the parties' joint liability in keeping with the pro-rata distribution formula of the parties' "other insurance" clauses. Under those identical clauses, each insurer's share shall be determined by comparing its limit of insurance to the total limits of all insurance available, adjusted for the sums previously advanced by way of settlement. The case is affirmed on Milwaukee Guardian's cross-appeal. Costs on appeal shall be assessed equally to De Smet and Deere.

**REVERSED AND REMANDED ON APPEAL; REVERSED IN PART AND**

AFFIRMED IN PART ON CROSS-AP-PEALS.