[No. 51765-1-I. Division One. December 29, 2003.]

TRUCK INSURANCE EXCHANGE, *Respondent*, v. BRE PROPERTIES, INC., ET AL., *Appellants*.

584

*Alexander A. Baehr, Christopher H. Howard,* and *Susan L. Peterson* (of *Holland & Knight, L.L.P.*) and *Paul S. Bierly* and *Katherine R. Heekin* (of *Markowitz, Herbold, Glade & Mehlhaf, P.C.*) (*Lynn R. Nakamoto,* of counsel), for appellants.

*Ryan J. Hall* and *Thomas Lether* (of *Clarke, Bovingdon, Cole, Mills & Lether, P.C.*), for respondent.

BAKER, J. — West Star Construction contracted with BRE Properties to work as a framing subcontractor on an apartment project. In the contract, West Star agreed to indem-

nify BRE against certain risks, and obtained a commercial general liability (CGL) policy covering itself and BRE. Later, a West Star employee was injured and sued BRE for negligence. BRE requested coverage from the insurer and brought a contribution claim against West Star. West Star then presented the claim to the insurer, claiming that the policy provided coverage for its indemnity agreement.

The insurer filed a declaratory judgment action arguing that it did not owe coverage to either BRE or West Star. BRE and West Star appeal the trial court's summary judgment decision denying them coverage. We hold that the insurer is obligated to cover both BRE and West Star, and reverse.

## I

BRE was the general contractor on a construction project to build an apartment complex. It contracted with West Star to serve as its framing subcontractor. The agreement between BRE and West Star required West Star to obtain liability insurance coverage for its work on the project. West Star procured a CGL policy from Truck Insurance Exchange. This coverage listed BRE as an additional insured under the policy.

West Star also contracted in the agreement to indemnify BRE for West Star's own negligence:

8.1 To the fullest extent permitted by law, Subcontractor agrees to indemnify and hold harmless Contractor. . . . from and against all claims, damages . . . *arising out of or resulting from the performance, or failure in performance, of Subcontractor's Work* and obligations as provided in the Contract Documents, including any extra Work, and from any claim, damage, loss or expense which (1) is attributable to bodily injury, sickness, disease, death, injury to or destruction of tangible property (other than the Work itself) . . . and (2) is *caused by any acts, omissions or negligence of subcontractor* . . . .

8.2 In any and all claims against Contractor or any of its agents or employees by any employee of Subcontractor, anyone di-

rectly or indirectly employed by Subcontractor or anyone for which acts Subcontractor may be liable, *the indemnification obligation* under this Paragraph 8 *shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under Worker's Compensation acts . . . .*

(Emphasis added.)

An employee of West Star was injured while working on the construction site. He sued BRE, claiming that it was negligent in equipping and maintaining the work area. His claims against BRE were exclusively related to the physical injuries he suffered while working as an employee of West Star. BRE requested that Truck provide for its defense and provide coverage under the CGL policy.

BRE also brought a third party complaint against West Star, alleging that the worker's injuries resulted from West Star's own "negligent acts and/or omissions." West Star requested that Truck provide coverage because its indemnification agreement with BRE created an "insured contract" covered under the CGL policy.

Truck brought a declaratory judgment action, and successfully moved for summary judgment on the basis that both claims were excluded under the CGL policy's exceptions.

The Businessowners Liability Coverage Form (contract) provides that Truck will cover " 'bodily injury,' 'property damage,' 'personal injury,' or 'advertising injury' to which this insurance applies."

The contract then excludes certain types of liabilities. One provision addressing contractual liability explains that the insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract," provided "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement . . . .

The policy later defines an "insured contract" as:

That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

A second provision explains that the policy does not apply to employees injured while performing their jobs:

This insurance does not apply to:

. . . .

e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; . . .

. . . .

This exclusion applies:

(a) Whether the insured may be liable as an employer or in any other capacity; and

(b) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## II

When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court.[1] We will

[1] *Doolittle v. Small Tribes of W. Wash., Inc.*, 94 Wn. App. 126, 134, 971 P.2d 545 (1999).

affirm an order granting summary judgment if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[2]

 Interpreting an insurance policy is a matter of law that we review de novo.[3] Whether coverage exists is a two-step process.[4] First, the insured must prove that the policy covers his loss. Thereafter, to avoid coverage the insurer must prove that specific policy language excludes the insured's loss.[5] Ultimately, we determine coverage "by characterizing the perils contributing to the loss, and determining which perils the policy covers and which it excludes."[6]

### BRE's Appeal

 Truck argues that the policy precludes coverage for injuries to employees who suffer injury during the course of employment. BRE responds that because the injured worker was not its employee, the exclusion does not apply. BRE explains that because the contract uses the term "the insured" when limiting coverage instead of "an insured" or "any insured," the exclusion can be read only as applying to the particular insured against whom the claim is made, and not other insured parties such as West Star.

We must first decide whether West Star's policy created separate coverage for BRE. The policy contains a severability clause that applies the policy separately to each named insured as if each insured were the only insured:

---

[2] CR 56(c); *Doolittle*, 94 Wn. App. at 134.

[3] *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 730-31, 837 P.2d 1000 (1992).

[4] *McDonald*, 119 Wn.2d at 731.

[5] *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 431-32, 38 P.3d 322 (2002).

[6] *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 44, 991 P.2d 734 (2000).

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

Under the endorsements provided by Truck, BRE is a named insured.

In the context of insurance contracts, when coverage and exclusions are defined in terms of "the insured," Washington courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint. This creates separate contracts between the insurer and each of the insureds. "The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct."[7]

As one commentator explains, another result of severability clauses is that they may lead to expanded coverage:

Severability clauses effectively create "multiple policies with identical terms but different insureds." When determining whether an exclusion should bar coverage for an additional insured, the presence of a severability of interests clause in the policy is construed to mean the policy should be read as if each insured were the only insured. Such a reading tends to expand coverage, which courts rationalize on the ground that the severability of interests clause is an insurer's implied recognition of a separate obligation to others . . . .[8]

Thus, BRE and West Star may each read the policy as if it is "the insured."

Truck argues that it is immaterial whether the policy uses the term "the insured" or "an insured" in its employer's

---

[7] *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wn. App. 261, 266, 579 P.2d 1015 (1978).

[8] Douglas R. Richmond & Darren S. Black, *Expanding Liability Coverage: Insured Contracts and Additional Insureds*, 44 Drake L. Rev. 781, 808 (1996).

liability exclusion; because the injured worker was an employee of West Star, the "bodily injury" to the employee is excluded by the policy. We disagree.

In *Unigard Mutual Insurance Co. v. Spokane School District No. 81*,[9] Division Three held that the parents of a minor were entitled to coverage under their insurance policy despite the intentional acts of their son. The parents' insurance policy contained an intentional injury exclusion, stating "[t]his policy does not apply . . . to bodily injury or property damage which is either expected or intended from the standpoint of the insured."[10] The court focused on the specific language of the exclusion, explaining that

> where coverage and exclusion is defined in terms of "the insured," the courts have uniformly considered the contract between the insurer and several insureds to be separable, rather than joint, i.e., there are separate contracts with each of the insureds. The result is that an excluded act of one insured does not bar coverage for additional insureds who have not engaged in the excluded conduct.[11]

And in *Federated American Insurance Co. v. Strong*,[12] Lisa Strong, while driving her husband's car, intentionally collided with two other automobiles.[13] The Strongs' insurance policy contained the following exclusionary clause:

> Exclusions: This policy does not apply under the Liability Section:
>
> . . . .
>
> (b) to bodily injury or property damage caused intentionally by or at the direction of the insured; . . . .[14]

Because the wife intentionally collided with the other vehicles, she was excluded from liability coverage under the

---

[9] 20 Wn. App. 261, 579 P.2d 1015 (1978).

[10] *Unigard*, 20 Wn. App. at 262.

[11] *Unigard*, 20 Wn. App. at 266 (footnote omitted).

[12] 102 Wn.2d 665, 689 P.2d 68 (1984).

[13] *Strong*, 102 Wn.2d at 666.

[14] *Strong*, 102 Wn.2d at 668.

policy. The issue on appeal was whether the policy exclusion applied to the husband.[15]

Our state Supreme Court, relying on *Unigard*, held that the plain terms of the policy entitled the husband to liability coverage.[16] The court reasoned that the policy's use of "the insured," meant that the husband and wife each had separate contracts with the insurer:

> Liability coverage is provided to "the insured." Coverage is excluded for injury or damage caused intentionally by "the insured." Since coverage and exclusion have been defined in terms of "the insured," there are separate contracts between [Federated American Insurance Co.] and its insureds, and the excluded act of Lisa Strong does not bar coverage for Clyde Strong.[17]

Finally, in *Mutual of Enumclaw Insurance Co. v. Cross*,[18] we examined the different effect of an insurance contract using "an insured" instead of "the insured." The court concluded that "an exclusion for 'an insured' is not restricted to intentional acts of the particular insured sought to be held liable, but broadly excludes coverage for all intentionally caused injury or damage by *an* insured, which includes anyone insured under the policy."[19] We distinguished this result from *Strong*, explaining that by using "an insured" instead of "the insured," the policy clearly intended to apply the exclusion to any insured.[20]

Although *Unigard*, *Strong*, and *Cross* all concern intentional acts by insureds, their reasoning applies equally to negligence claims. When an insurance policy contains an exclusion for "the insured," each insured is entitled to read the policy as if applying only to that insured.

[15] *Strong*, 102 Wn.2d at 668.

[16] *Strong*, 102 Wn.2d at 669.

[17] *Strong*, 102 Wn.2d at 669.

[18] 103 Wn. App. 52, 10 P.3d 440 (2000).

[19] *Cross*, 103 Wn. App. at 59 (quoting *Farmers Ins. Co. v. Hembree*, 54 Wn. App. 195, 200-01, 773 P.2d 105 (1989)).

[20] *Cross*, 103 Wn. App. at 59.

Turning to the policy in question, we see that the exclusion in the employer liability section excludes coverage for "an 'employee' of the insured arising out of and in the course of employment." The policy clearly excludes only coverage for employees of "the insured" (BRE), and not "an insured" (West Star). Because the injured worker was not an employee of BRE, BRE is entitled to policy coverage for the claim.

### West Star's Appeal

■ West Star also appeals the trial court's denial of coverage for it as to the third party claim brought by BRE. The trial court apparently relied on the same exclusion for bodily injuries to employees arising from work done in the course of employment. West Star argues that its indemnification agreement with BRE is an insured contract excepted from that policy exclusion. The policy defines "insured contract" as:

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Both parties focus on defining what "tort liability" means.

Truck first argues that the indemnity and contribution claims are for pure economic loss, rather than bodily injury, and do not fall within the initial grant of coverage. But this reading of the policy is not supported by its plain language. The policy provides that the insurer will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies."

As West Star explains, Truck's position is illogical. If no claim for contractually assumed liability can ever fall within the coverage clause, then the "insured contract" clauses found throughout the policy would never apply, and

would be extraneous. For example, the policy's first exception excludes all contractual liability except contractual liability that West Star would owe in the absence of the contract or agreement (common law contribution) or liability assumed by an "insured contract." The policy clearly contemplates instances where the insurer must provide coverage for the insured's assumption of liability.

Truck next argues that the employee injury exception excludes coverage because it applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury. But the employee injury exclusion explicitly does not apply to liability assumed by the insured under an "insured contract." Thus, if the indemnification agreement is an "insured contract" under the policy's definition, then the policy covers West Star for its potential liability on this claim.

To satisfy the requirements for an insured contract, the agreement must transfer liability from the indemnitor to the indemnitee. Truck argues that the indemnification agreement is not an insured contract because West Star does not assume any of BRE's liability.

RCW 4.24.115 prohibits an indemnitor in a construction contract from contracting away its liability. But indemnitors may enter into such agreements for the purpose of making subcontractors liable for their own fault. And although these agreements do not serve to make the subcontractor liable for the general contractor's negligence, they do remove the subcontractor's immunity, making the subcontractor liable to the general contractor for the subcontractor's own share of any judgment obtained by the subcontractor's employee.

In Washington, courts enforce third party indemnification agreements despite the exclusivity of the Industrial Insurance Act[21] because the liability is not imposed by law. Rather, the employer voluntarily assumes liability in a

---

[21] Title 51 RCW.

contract.[22] Enforcing such indemnification provisions allows contractors to allocate "responsibility to purchase insurance" according to their negotiated allocation of risk and potential liabilities.[23]

No Washington case has addressed whether such indemnity provisions in a construction contract are insured contracts, but several decisions from other states have concluded that an indemnity agreement was an "insured contract" under similar circumstances.

The Illinois Court of Appeals examined identical contract provisions in *West Bend Mutual Insurance Co. v. Mulligan Masonry Co.*[24] In *West Bend*, a subcontractor agreed to indemnify the general contractor and maintain liability insurance. An injured employee of the subcontractor sued the general contractor, who then claimed contribution against the subcontractor. The subcontractor attempted to use its CGL policy to provide coverage for its liability.

The Illinois court looked at the language defining "insured contract" and focused on the term "tort liability."[25] Illinois has a statute similar to RCW 4.24.115 that prohibited the assumption of liability for another's negligence in a construction contract.[26] As in this case, the insurer argued that the subcontractor was not assuming the tort liability of the general contractor. Thus, the indemnity agreement could not be an insured contract under the policy.

The Illinois court rejected that argument. It reasoned that, because the general contractor has joint and several liability, the subcontractor's waiver of its workers' compensation immunity in the indemnity agreement operated to

---

[22] *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 128 Wn.2d 745, 753, 912 P.2d 472 (1996); *see also Redford v. City of Seattle*, 94 Wn.2d 198, 204, 615 P.2d 1285 (1980) (allowing indemnification agreements between employers and third parties).

[23] *McDowell v. Austin Co.*, 105 Wn.2d 48, 54, 710 P.2d 192 (1985).

[24] 337 Ill. App. 3d 698, 786 N.E.2d 1078, 272 Ill. Dec. 244 (2003).

[25] *West Bend*, 786 N.E.2d at 1084.

[26] *West Bend*, 786 N.E.2d at 1084.

assume tort liability that otherwise would have been imposed on the general contractor.

In *John Deere Insurance Co. v. De Smet Insurance Co.*,[27] the Iowa Supreme Court interpreted an identical "insured contract" provision in the context of automobile insurance and concluded that an indemnification agreement was an insured contract. An employer had agreed to indemnify an employee for any damages arising from using his personal vehicle while working. The court acknowledged that "the concept of 'insured contract' generally contemplates an agreement to undertake liability 'which did not exist prior to the assumption.' "[28] But in the agreement before it, the insured contract definition placed no limits "on whether the tort liability allegedly assumed would or would not rest with the insured as a matter of law."[29] Specifically, the court did not find limiting language requiring the explicit assumption of another's liability due to negligence. Rather, the policy required only that the insured assume the other party's "tort liability."[30] The only question according to the court was "whether (1) an agreement was reached, (2) pertaining to the business, (3) by which the insured . . . assumed the tort liability of another for bodily injury or property damage sustained by a third party."[31] As the court cautioned, "the insurance company is its own lexicographer and can define 'insured contract' as it chooses."[32]

Here, West Star and BRE reached a business agreement whereby West Star assumed BRE's tort liability for bodily injury suffered by a third party. And because West Star indemnified BRE from liability that BRE would have had

---

[27] 650 N.W.2d 601 (Iowa 2002).

[28] *John Deere*, 650 N.W.2d at 607 (quoting *Lewis v. Hamilton*, 652 So. 2d 1327, 1330 (La. 1995)).

[29] *John Deere*, 650 N.W.2d at 607.

[30] *John Deere*, 650 N.W.2d at 607.

[31] *John Deere*, 650 N.W.2d at 607.

[32] *John Deere*, 650 N.W.2d at 607.

absent the contract or agreement, the indemnification agreement is an "insured contract." Accordingly, Truck must provide coverage for any indemnification that West Star owes BRE.

Finally, Truck asks this court to decide several issues concerning the underlying policy if we find coverage. Specifically, Truck asks us to hold that its insurance coverage is limited to excess coverage, that Truck is entitled to an assignment of rights against any other carrier providing coverage, and that the workers' compensation exclusion in Truck's policy limits the amount of coverage Truck is obligated to pay West Star.

But these issues are both premature and not fully briefed. In fact, Truck fails to cite any relevant authority for any of its three requests. We decline to address these issues until there is a proper record before the court.

Reversed.

Cox, A.C.J., and SCHINDLER, J., concur.