JAMES R. KENDLE *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF DOWNERS GROVE *et al.*, Defendants-Appellees.

Second District    No. 2—86—0818

Opinion filed June 10, 1987.

S. Louis Rathje, John F. Garrow, and Reese J. Peck, all of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellants.

Wiley W. Edmondson and Charles F. Haverty III; both of Brady, McQueen, Martin, Collins & Jensen, of Elgin, Douglas A. Slansky, of Bowers, Carney, Wiedel & Slansky, of Downers Grove, and Barry A. Pitler, of Pitler & Mandell, of Chicago, for appellee Philip I. Mappa.

Barbara J. Gosselar, of Downers Grove, for appellee Village of Downers Grove.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiffs, James R. and Lois M. Kendle, appeal from the trial court's judgment denying their motion for voluntary dismissal pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110. par. 2—1009) and dismissing their cause of action with prejudice.

Plaintiffs raise the following issues on appeal: (1) whether the trial court erred in denying their motion because they had an absolute right to a voluntary dismissal under section 2—1009; (2) whether the trial court erred in ordering, on its own motion, an evidentiary hearing to determine if there would be any prejudice to defendants if plaintiffs' motion for voluntary dismissal was granted; and (3) whether the trial

court erred in entering its written order *nunc pro tunc* to the date of the hearing, in including findings not supported by the record, and in denying their motion for reconsideration.

Plaintiffs filed their complaint on December 26, 1985, against the village of Downers Grove (village), Philip I. Mappa Interests, Inc. (Mappa), and the owners of property located in a residential development known as Butterfield Woods. Only the defendant Mappa and the village filed briefs in this appeal. The complaint alleged that Mappa, a developer, had proposed a business planned development which included plans for eight office buildings ranging from 5 to 15 stories and for an eight-story hotel. Plaintiffs also alleged that the proposed development site is a heavily wooded area consisting of 33 single-family residences situated on lots ranging from one to six acres and that Mappa has executed options to purchase with the owners of 31 of the 33 individual properties.

Plaintiffs further alleged that the site is surrounded by residential properties and had been zoned residential by Du Page County, but was annexed by the village and the zoning changed to "Office/Research District, Planned Unit Development" on November 4, 1985. Plaintiffs alleged that the proposed development would entirely surround their property, would require them to rely on private driveways as their means of access to and from their property, and would increase the rate of storm water runoff and divert the flow of runoff onto their property, causing a substantial loss of trees.

The complaint requested a declaration that the ordinances of the village annexing and changing the zoning of the site are invalid and void and requested an injunction restraining the village from enforcing the ordinances and restraining Mappa from proceeding with the development of the site.

On January 24, 1986, Mappa filed a motion for trial setting, alleging that no party defendant had been served with process by plaintiffs and that plaintiffs' suit had created a cloud on the title to the individual properties preventing their acquisition and forestalling construction of the proposed Highland Woods Development. The motion requested that, due to the substantial harm which may accrue to the individual property owners, the village, and Mappa, the court set a date for trial on the merits at the earliest convenient date. On January 28, 1986, the court ordered that the defendants had seven days to file their answer and appearance, that discovery cutoff was March 31, 1986, and that trial would be in April or May 1986.

Mappa and several of the individual defendants filed answers to the complaint. The village filed answers to plaintiffs' interrogatories on

March 26, 1986, and plaintiffs filed answers to defendants' interrogatories on March 31, 1986. On April 3, 1986, defendants filed a motion for expedited trial alleging irreparable harm due to the continuation of the lawsuit. Attached to the motion was a copy of a pamphlet distributed by an organization known as "START, Inc.," which included the statement:

> "START has pledged it's financial support to JIM and LOIS KENDLE, who are property owners in Highland Woods refusing to sell their home to Mappa, and are suing Mappa and the Village of Downers Grove. *Their* lawsuit is *our* lawsuit and by supporting the Kendles we are actively preventing Mappa from carrying out his intentions to develop the property. With luck, this lawsuit could go on for years."

A hearing was held on the motion on April 29, 1986. Plaintiffs' counsel stated that they would be conducting depositions of defendants' 12 expert witnesses after plaintiffs' experts were able to review the written discovery. He indicated that it was premature at that time to set an early trial date as they needed a reasonable amount of time to prepare adequately. The court then set trial to begin on June 4, 1986.

Mappa filed answers to plaintiffs' interrogatories on April 30, 1986. Plaintiffs filed a motion to continue on May 9, 1986. Plaintiffs alleged that interrogatories had not been answered by the individual defendants and that defendants had disclosed 15 expert witnesses prior to March 28, 1986, who were being scheduled for depositions. Plaintiffs stated that they were proceeding in all good faith with their discovery, that they were entitled to discovery, and requested that the trial dates be continued. The court, on May 13, 1986, set trial to begin on June 18, 1986. The individual defendants filed answers to plaintiffs' interrogatories between May 9, 1986, and June 12, 1986.

Plaintiffs filed another motion for a continuance and argued that they had received new information not previously disclosed to them regarding the drainage plan for the site during the deposition of one of defendants' experts. They also argued that several documents had just been made available to them by Mappa and that they had been unable to conduct depositions of several of defendants' expert witnesses. On June 10, 1986, the trial court reset trial to begin on June 30.

On June 23, 1986, plaintiffs again filed a motion to continue trial alleging that several depositions had not yet been taken, that deposition transcripts had not been received, and that documents of significant relevance and importance to plaintiffs' traffic expert had just been received. Mappa responded stating that any necessary depositions had been taken or were scheduled and that, as plaintiffs had already been

given two continuances, they were not entitled to another. Following a hearing on June 24, 1986, where plaintiffs stated that they were only asking for 10 to 14 days, the court denied plaintiffs' motion.

Plaintiffs, on June 25, 1986, filed a motion for voluntary dismissal pursuant to section 2—1009 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009), stating that the motion was being made prior to the beginning of trial, that no counterclaim had been filed, and that costs incurred by all defendants as shown by the official court file and clerk's records were being tendered. The individual defendants filed a response in opposition to plaintiffs' motion for voluntary dismissal, arguing that the lawsuit had had the effect of preventing the sale of their homes to Mappa and that delay in the prompt resolution of the controversy had caused real hardship, uncertainty, and irreparable harm. They alleged that, with their motion for voluntary dismissal, plaintiffs were attempting to gain the delay precluded by the trial court's order denying them another continuance.

A hearing was held on the motion June 27, 1986. The court, after hearing arguments of counsel and on its own motion, set the matter for a hearing to allow the defendants to present evidence and testimony to show how they might be prejudiced if plaintiffs were granted the voluntary dismissal without prejudice. Plaintiffs elected not to participate in the hearing held on June 30, 1986. Defendants presented the testimony of several of the individual property owners involved regarding hardships and stress they were undergoing because of the pending lawsuit.

Stephen Veitch, village manager of Downers Grove, testified that the village's consideration of petitions for development of similarly situated property and decisions concerning the financing of improvements have been inhibited by the pendency of this litigation. Arthur Fedder, office counsel of Chicago Title and Trust, testified that his company is not insuring against any losses which might arise out of the outcome of this litigation and would not issue a zoning endorsement insuring that the improvements located on the land comply with the zoning ordinances. Philip I. Mappa, Mappa's president, testified that because of the inability to receive a zoning endorsement from Chicago Title and Trust, he could not get the financing committed to the project because the commitment requires free and clear title in terms of the zoning required. He also testified that, under the current agreements with the property owners, the price he will be paying for the properties will increase by $840,000 per year.

Following this hearing, the trial judge determined that plaintiffs' motion would be granted with prejudice. A written order was prepared by defendants' counsel and was entered July 2, 1986, *nunc pro tunc* to

June 30, 1986. The written order stated that plaintiffs' motion for voluntary dismissal was denied and that, plaintiffs having refused to proceed to trial on the date assigned, the case was dismissed with prejudice. Following the denial of their motion for reconsideration, plaintiffs appeal.

■ Plaintiffs first maintain that the trial court erred in denying their motion for voluntary dismissal. They contend that, pursuant to section 2—1009(a) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009(a)), they have an absolute right to a voluntary dismissal without prejudice if the statutory requirements are met.

Section 2—1009(a) provides:

"The plaintiff may, at any time before trial or hearing begins, upon notice to each party who had appeared or each such party's attorney, and upon payment of costs, dismiss his or her action or any part thereof as to any defendant, without prejudice, by order filed in the cause. Thereafter the plaintiff may dismiss, only on terms fixed by the court (1) upon filing a stipulation to that effect signed by the defendant, or (2) on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof. After a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1009(a).)

This section allows a plaintiff to dismiss an action at any time before trial or a hearing begins. This is an absolute right and is not tempered by any discretionary language in the statute. (*Moody's Investors Service, Inc. v. Department of Revenue* (1984), 101 Ill. 2d 291, 297, 461 N.E.2d 972.) The appellate court has held that when notice is given and proper costs paid, the plaintiff's right to a voluntary dismissal without prejudice prior to trial or a hearing is absolute, and the court has no discretion to deny the plaintiff's motion for dismissal. *Russ v. Gandhy* (1986), 149 Ill. App. 3d 660, 662, 500 N.E.2d 1032; *Davis v. International Harvester Co.* (1985), 139 Ill. App. 3d 264, 268, 487 N.E.2d 385; *Heinz v. County of McHenry* (1984), 122 Ill. App. 3d 895, 897, 461 N.E.2d 672.

In *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 472 N.E.2d 787, the defendants appealed the granting of the plaintiff's motion for voluntary dismissal which was brought after the trial judge had ruled on motions *in limine* and after plaintiff's motion for continuance was denied. The defendants there argued that, because of the granting of the motion, they would be required to prepare again for trial and would

have to expend more time and money. The court recognized that it was unfortunate that the defendants had been inconvenienced, but indicated that this type of hardship sometimes happens in our adversary system and that, as long as the dismissal order is subject to review, the defendants had suffered no legal prejudice. 104 Ill. 2d 302, 307, 472 N.E.2d 787.

Mappa argues that the situation here involves damages and prejudice different both in kind and degree from the hardship involved in *Kahle* as plaintiffs here had obtained a *"de facto* injunction" by filing their lawsuit, causing huge financial losses to Mappa and the disruption of the lives of the property owner defendants. Mappa, however, cites no case authority for this proposition; nor does it cite any authority recognizing the concept of a *"de facto* injunction."

■ Clearly, plaintiffs' right to bring and prosecute this action cannot be disputed. While the trial court here found that defendants had been prejudiced by the pendency of the lawsuit, the fact is that here, as in *Kahle,* the granting of plaintiffs' motion for voluntary dismissal would create no legal prejudice to defendants' right to defend against the lawsuit. Under section 2—1009, any hardship or inconvenience suffered by the defendants is not a consideration in ruling on a plaintiff's motion for voluntary dismissal. (See *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 307, 472 N.E.2d 787.) The court in *Kahle* specifically stated that any limits on a plaintiff's right to a voluntary dismissal beyond limiting that right after trial or hearing has commenced should be enacted by the legislature, not declared by the courts. (*Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 307-08, 472 N.E.2d 787.) Since the *Kahle* decision, the appellate court has interpreted *Kahle* as not giving the trial court discretion in granting or denying a motion to dismiss. *Russ v. Gandhy* (1986), 149 Ill. App. 3d 660, 662-63, 500 N.E.2d 1032.

Defendants argue, however, that the law has been changed by the recent case of *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 492 N.E.2d 1322. In *O'Connell,* our supreme court held that where a plaintiff, relying on section 2—1009, moves to voluntarily dismiss his suit while a defendant's Rule 103(b) motion to dismiss for lack of due diligence in obtaining service of process is pending, the trial court must hear the latter motion on its merits prior to ruling on the plaintiff's motion. (112 Ill. 2d 273, 283, 492 N.E.2d 1322.) The court noted that both the judiciary and the legislature may promulgate procedural rules, but if a supreme court rule is in conflict with a legislative enactment, the rule will prevail. (112 Ill. 2d 273, 281, 492 N.E.2d 1322.) The court then determined that sections 2—1009 and 13—217 of the Code of Civil Procedure, which allow a plaintiff to voluntarily dismiss his complaint

even where service of process is not effected until expiration of the applicable statute of limitations and refile the complaint within one year (Ill. Rev. Stat. 1985, ch. 110, pars. 2—1009, 13—217), are in conflict with Rule 103(b), which allows a defendant to move for dismissal with prejudice, after the expiration of the applicable statute of limitations for failure to exercise reasonable diligence to obtain service (87 Ill. 2d R. 103(b)). *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 281-83, 492 N.E.2d 1322.

The village contends that, similarly, a plaintiff's right to a voluntary dismissal under section 2—1009 should not be allowed to impede a trial judge from establishing a trial date in his discretion and, pursuant to Supreme Court Rule 231 (87 Ill. 2d R. 231), from granting or denying a requested continuance. There is no conflict, however, between Rule 231 and section 2—1009. Rule 231 merely sets up requirements for a motion for a continuance and states when such a motion will be denied. The appellate court in *Highland v. Stevenson* (1987), 153 Ill. App. 3d 390, 505 N.E.2d 776, rejected a similar argument regarding a conflict between Supreme Court Rule 220(103 Ill. 2d R. 220) and section 2—1009. The court concluded that there was no conflict as Rule 220, unlike Rule 103(b), does not work to bar a plaintiff from bringing an action if it is not followed and in no way causes dismissal of a plaintiff's case with prejudice. (*Highland v. Stevenson* (1987), 153 Ill. App. 3d 390, 396, 505 N.E.2d 776.) The same is true of Rule 231. Further, our supreme court recognized a plaintiff's right to move for a voluntary dismissal after the denial of a motion for a continuance in *Kahle v. John Deere Co.* (1984), 104 Ill. 2d 302, 307, 472 N.E.2d 787.

■ Defendants also argue that the supreme court's statement, "[n]othing is more critical to the judicial function than the administration of justice without delay" (*Catlett v. Novak* (1987), 116 Ill. 2d 63, 70, 506 N.E.2d 586; *O'Connell v. St. Francis Hospital* (1986), 112 Ill. 2d 273, 282, 492 N.E.2d 1322), gives the trial court discretion in ruling on a section 2—1009 motion. They argue that the court may look at the total circumstances of each case to determine if a motion for voluntary dismissal is a direct attempt to usurp judicial authority to assure justice without delay and may deny the motion if the delay, as here, is causing significant prejudice to the defendants. *O'Connell*, however, does not support this position.

*O'Connell* merely dealt with the conflict between Rule 103(b) and sections 2—1009 and 13—217 and did not indicate any alteration of the supreme court's decision in *Kahle* recognizing a plaintiff's otherwise absolute right to a voluntary dismissal. (*Rohr v. Knaus* (1987), 153 Ill. App. 3d 1013, 1017, 506 N.E.2d 634; *Kern v. Peabody Coal Co.* (1987),

151 Ill. App. 3d 807, 810, 502 N.E.2d 1322; see also *Mancuso v. Beach* (1986), 149 Ill. App. 3d 188, 191-92, 500 N.E.2d 589.) While abuse by counsel of the privilege granted to plaintiffs of voluntarily dismissing a complaint before trial and refiling under sections 2—1009 and 13—217 is possible (see *Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 123-25, 497 N.E.2d 745 (Ryan, J., dissenting)), any change in the procedure should be addressed by the General Assembly or by supreme court rule. See *Rohr v. Knaus* (1987), 153 Ill. App. 3d 1013, 1017, 506 N.E.2d 634.

■ Defendants next contend that the motion for voluntary dismissal was properly denied as defendants' answers were the equivalent of counterclaims within the meaning of section 2—1009. Section 2—1009 provides, in pertinent part, that after a counterclaim has been pleaded by a defendant, no voluntary dismissal may be had as to the defendant except by the defendant's consent. Defendants rely on *In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, 875, 469 N.E.2d 410, and *Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 342, 254 N.E.2d 281, which determined that, in an action for declaratory judgment, an answer including a prayer for relief may be considered a counterclaim. In *Soderholm*, the defendant's answer included a prayer for declaratory relief supported by affirmative allegations. (*In re Estate of Soderholm* (1984), 127 Ill. App. 3d 871, 875, 469 N.E.2d 410.) It is not clear what relief was requested by the defendant in *Country Life Insurance Co. v. Goffinet* (1969), 117 Ill. App. 2d 338, 342, 254 N.E.2d 281; however, the answer did contain a specific prayer for relief which was granted.

No specific prayer for declaratory relief was included in Mappa's or the village's answers here. Mappa, however, cites *Johnson v. Town of the City of Evanston* (1976), 39 Ill. App. 3d 419, 350 N.E.2d 70, which states that "[w]here the answer to a complaint for declaratory judgment meets and controverts the issues raised by that complaint, no counterclaim is required for the court to declare the rights of all the parties." (39 Ill. App. 3d 419, 423, 350 N.E.2d 70.) Mappa then argues that, as a counterclaim was therefore not necessary, the defendants' answers were the equivalent of counterclaims and precluded the granting of plaintiffs' motion for voluntary dismissal.

The issue here, however, is not whether a counterclaim was necessary for a grant of declaratory relief on a summary judgment motion, but whether a counterclaim existed in the context of section 2—1009 which precluded a motion for voluntary dismissal. It is ludicrous to suggest that any answer to a claim for declaratory relief constitutes a counterclaim. Generally, in order to constitute a counterclaim which

will preclude a plaintiff's motion for voluntary dismissal, a defendant must allege an independent, substantive cause of action, even though it might arise out of the same transaction. (*People v. American National Bank & Trust Co.* (1965), 32 Ill. 2d 115, 119-20, 203 N.E.2d 897.) It is clear that neither Mappa's nor the village's answers contained a specific prayer for relief or raised a substantive cause of action against plaintiffs and, therefore, cannot be considered counterclaims under the circumstances here.

For the same reasons, there is no merit to the village's additional argument that the answers of three of the individual defendants which requested that the complaint be dismissed or denied constituted counterclaims. The language tacked onto the end of those answers was merely a variation of a standard phrase often included in an answer to a complaint. It is clear that this standard language did not raise the answers to the level of a counterclaim as well.

As plaintiffs here met the requirements of section 2—1009, the trial court was without discretion to deny the plaintiffs' motion for voluntary dismissal. The order of the circuit court of Du Page County denying the motion and dismissing the action with prejudice is reversed.

We note that Mappa, on appeal, has referred to the trial court's July 2, 1986, written order which states that, in the event that its order denying plaintiffs' motion for voluntary dismissal is reversed, the court nevertheless denies plaintiffs leave to reinstate this cause after such appeal. Mappa contends that this order shows the trial court's intent to enjoin plaintiffs from bringing another lawsuit and was an appropriate exercise of the court's power to enjoin the prosecution of vexatious and abusive litigation. We need not address this meritless contention other than to state that our decision reverses the trial court's denial of plaintiffs' motion for voluntary dismissal. Any language in the trial court's order purporting to deny plaintiffs the right to reinstate their cause of action is therefore precluded by our decision.

Because of our resolution of this appeal on this issue, plaintiffs' additional contentions need not be addressed.

Reversed.

UNVERZAGT and NASH, JJ. concur.