WEST BEND MUTUAL INSURANCE COMPANY, Plaintiff-Appellant and Cross-Appellee, v. MULLIGAN MASONRY COMPANY, INC., Defendant-Appellee and Cross-Appellant (R.C. Wegman Construction Company, Defendant and Cross-Appellant; Donald Weeks, Defendant).

Second District No. 2—01—0909

Opinion filed March 24, 2003.

McLAREN, J., dissenting.

Francis A. Spina, of Cremer, Kopon, Shaughnessy & Spina, L.L.C., of Chicago, for appellant.

John J. Piegore and Patti M. Deuel, both of Kiesler & Berman, and George P. Smyrniotis, of Bollinger, Ruberry & Garvey, both of Chicago, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiff, West Bend Mutual Insurance Company, sought a declaration that it had no duty to defend or indemnify its insured, defendant, Mulligan Masonry Company, Inc., against a third-party action arising out of an injury to defendant's employee, Donald Weeks. Ruling that plaintiff owed a duty to defend, the trial court denied plaintiff's motion for summary judgment and granted defendant's motion for summary judgment. On appeal, plaintiff argues that (1) the trial court erred in granting defendant affirmative relief even though defendant filed no pleading requesting such relief; and (2) the trial court incorrectly found that plaintiff owed a duty to defend. We affirm.

Our summary of the background facts is taken from the documents attached to the pleadings and to the motions for summary judgment. On January 27, 1995, plaintiff issued defendant a contractors business owners insurance policy. The policy included a standard commercial general liability (CGL) coverage form. Also, defendant was a named insured under a workers compensation and employers liability policy issued by Virginia Surety Company.

R.C. Wegman Construction Company (Wegman) was the general contractor on a construction project at St. Joseph Catholic Church in Aurora. Wegman hired defendant to perform the masonry work on the project. The contract between Wegman and defendant contained an indemnification clause and required defendant to maintain liability insurance and name Wegman as an additional insured. The policy issued by plaintiff included Wegman as an additional insured. The additional insured endorsement provided, however, that the insurance was excess over any other valid and collectible insurance and that it provided no coverage for liability arising out of the claimed negligence of Wegman or any party other than defendant.

On May 30, 1995, Weeks was injured while working at the church. He brought a negligence action against Wegman. Weeks's complaint alleged that, while Weeks was working on a scaffold, a bundle of bricks sitting on the scaffold fell over and injured him. The complaint alleged further that Wegman was negligent because it failed to inspect the site, improperly managed the site, and failed to erect a safe scaffold.

Wegman filed a third-party complaint against defendant. In count I, Wegman alleged that defendant's negligent acts or omissions were a proximate cause of Weeks's injuries and sought contribution in the amount of defendant's *pro rata* share of the common liability. Count II sought indemnity under the contract between Wegman and defendant, and count III alleged that defendant breached the contract by failing to provide primary liability coverage for Wegman as an additional insured. The trial court in the negligence action dismissed count II of the third-party complaint.

Defendant tendered the third-party claim to plaintiff, and plaintiff denied coverage. Plaintiff then filed a complaint seeking a declaration of the parties' rights under the policy. Plaintiff filed a first amended complaint that additionally sought a declaration that it did not have a duty to defend or indemnify Wegman against Weeks's negligence claim. Defendant answered the first amended complaint and submitted three affirmative defenses. The affirmative defenses were that (1) plaintiff was estopped to deny coverage, (2) the relevant policy terms were ambiguous, and (3) plaintiff was bound by its agent's representation that the policy covered losses like the one at issue here. In these plead-

ings, defendant asked the trial court to declare that plaintiff owed it a defense and indemnity.

Wegman ultimately filed a second amended third-party complaint. Again, count I sought contribution, and count III alleged a breach of the contract. Count II was entitled "liability assumed by contract" and relied on the indemnity clause in the contract. Count II alleged that the trial court in Weeks's negligence action found that there was a question of fact about whether defendant waived the liability limit afforded under the Workers' Compensation Act (820 ILCS 305/5 (West 1996)) and *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155 (1991). See *Liccardi v. Stolt Terminals, Inc.*, 178 Ill. 2d 540, 550 (1997). Therefore, according to Wegman, under the contract, defendant was liable to pay Wegman contribution in excess of the *"Kotecki* cap" on defendant's liability.

In response to the second amended third-party complaint, plaintiff filed a second amended complaint containing essentially the same allegations as its earlier complaints. In its answer to plaintiff's second amended complaint, defendant again asked the trial court to declare that plaintiff owed it a defense and indemnity.

Plaintiff and defendant each moved for summary judgment. Plaintiff relied on the "employer's liability" exclusion, which excludes coverage for work-related injuries sustained by an employee of the insured, and the "contractual liability" exclusion, which excludes coverage for liability the insured assumed in a contract. Defendant argued that, under the exception for liability assumed by the insured under an "insured contract," these exclusions did not apply. Plaintiff and Wegman also filed cross-motions for summary judgment.

The trial court granted plaintiff summary judgment against Wegman and declared that plaintiff owed Wegman no defense. Finding that plaintiff owed defendant a duty to defend the third-party claim, the trial court denied plaintiff's summary judgment motion and granted defendant's motion. The court reserved a finding on the duty to indemnify until a judgment or settlement was reached in the underlying litigation. The court found, pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just reason to delay the enforcement or appeal of its order. Plaintiff timely appealed. Defendant and Wegman cross-appealed the trial court's finding that plaintiff did not owe Wegman a duty to defend. The parties have not filed briefs addressing the cross-appeal. During the oral argument, the parties informed us that defendant and Wegman are abandoning the cross-appeal. Therefore, we address only plaintiff's appeal.

■ Summary judgment is properly granted if, when viewed in the light most favorable to the nonmovant, the pleadings, affidavits,

depositions, admissions, and exhibits on file reveal that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. *Diehl v. Polo Cooperative Ass'n*, 328 Ill. App. 3d 576, 579 (2002). The nonmovant need not prove its case at the summary judgment stage but must come forward with evidence that establishes a genuine issue of material fact. *Diehl*, 328 Ill. App. 3d at 579. We review *de novo* the trial court's ruling. *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002).

Plaintiff's first contention on appeal is that the trial court improperly granted defendant affirmative relief, *i.e.*, a declaratory judgment in defendant's favor, even though defendant did not file a counterclaim seeking such relief. Defendant filed an answer and affirmative defenses. In these pleadings, defendant asked the trial court to declare that plaintiff owed it a defense and indemnity.

■ In declaratory judgment actions, an answer that includes a prayer for specific relief may be considered a counterclaim. *Kendle v. Village of Downers Grove*, 156 Ill. App. 3d 545, 553 (1987); *In re Estate of Soderholm*, 127 Ill. App. 3d 871, 875 (1984). Where the answer to a complaint for a declaratory judgment meets and controverts the issues raised by the complaint, no formal counterclaim is required to allow the court to declare the rights of all of the parties. *Johnson v. Town of the City of Evanston*, 39 Ill. App. 3d 419, 423 (1976). If plaintiff's complaint for a declaration that it owes no duty to defend Wegman's third-party claim is without merit, then it naturally follows that plaintiff does owe a duty to defend. Under the circumstances, the trial court properly construed the pleadings liberally and declared the parties' rights under the policy. See *Norman A. Koglin Associates v. Valenz Oro, Inc.*, 176 Ill. 2d 385, 395-96 (1997).

■ Plaintiff's second contention on appeal is that it does not owe defendant a duty to defend Wegman's third-party action. An insurer owes its insured a duty to defend an action brought against the insured if the underlying complaints allege facts within or potentially within the policy's coverage. *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 98 (2000). An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts that bring the case within or potentially within the policy's coverage. *Northbrook Property*, 194 Ill. 2d at 98.

Plaintiff asserts that the "employer's liability" and the "contractual liability" exclusions apply and therefore that it does not owe defendant a duty to defend. The policy states:

"2. Exclusions

This insurance does not apply to:

\*\*\*

b. Contractual Liability

'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) Assumed in a contract or agreement that is an 'insured contract,' provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement; or

(2) That the insured would have in the absence of the contract or agreement.

\*\*\*

e. Employer's Liability

'Bodily injury' to:

(1) An 'employee' of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that 'employee' as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an 'insured contract.' "

The parties do not dispute that the exclusions are triggered here. The issue is whether the "insured contract" exception contained in each exclusion applies. The policy defines an "insured contract" in pertinent part as:

"That part of any other contract or agreement pertaining to your business \*\*\* under which [the insured] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

The contract between defendant and Wegman contains an indemnification clause stating:

"To the fullest extent permitted by law, [defendant] shall indemnify and hold harmless [Wegman] \*\*\* and all of [its] agents and employees from and against claims, damages, losses, and expenses, including but not limited to attorneys' fees arising out of

or resulting from the performance or failure in performance of [defendant's] work under this agreement provided that any such claim, damage, loss, or expense (1) is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property including the loss of use resulting therefrom, (2) is caused, in whole or in part, by any negligent act or omission of [defendant] or anyone directly or indirectly employed by [defendant], or anyone for whose acts [defendant] may be liable, regardless of whether caused in part by a party indemnified hereunder. \*\*\* In any and all claims against [Wegman], or any of its agents or employees, by any employee of [defendant], or anyone directly or indirectly employed by [defendant], or anyone for whose acts he may be liable, \*\*\* the indemnification obligation under this paragraph 5.2 shall not be limited in any way by any limitation on the amount or type of damages, compensation, or benefits payable by or for [defendant] under Worker's Compensation Acts, disability benefit acts, or other employee benefit acts."

■ When construing an insurance policy, the court must ascertain the parties' intent. *Konami (America), Inc. v. Hartford Insurance Co. of Illinois*, 326 Ill. App. 3d 874, 879 (2002). If the policy terms are unambiguous, the court will afford them their plain, ordinary, and popular meaning. *Konami*, 326 Ill. App. 3d at 879. If, however, the terms are susceptible to more than one interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer that drafted the policy. *Konami*, 326 Ill. App. 3d at 879.

Plaintiff acknowledges that this court's decision in *Michael Nicholas, Inc. v. Royal Insurance Co. of America*, 321 Ill. App. 3d 909 (2001), controls here. Plaintiff asks us to reject it, however. *Michael Nicholas* involved the same factual scenario and identical insurance policy language. The insured was a subcontractor at a subdivision that Kimball Hill was developing. An employee of the insured was injured on the site and, alleging negligence and violations of the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1994) (repealed by Pub. Act 89—2, §5, eff. February 14, 1995)), sued Kimball Hill. Alleging that the insured's negligence or wilful and wanton conduct caused the employee's injuries, Kimball Hill sued the insured. Kimball Hill sought either indemnification or full contribution. The indemnification clause in the contract between the insured and Kimball Hill provided that the insured would indemnify Kimball Hill against liability for bodily injury " 'caused in whole or in part by any negligent act or omission' " of the insured. *Michael Nicholas*, 321 Ill. App. 3d at 911.

The insurer argued that the contract between the insured and Kimball Hill was not an "insured contract." According to the insurer, because the insured agreed to indemnify Kimball Hill against only

those damages caused by the insured's negligence, the insured did not agree to assume the tort liability of another. The insurer asserted that an insured contract exists only if the insured agreed to indemnify another party against that party's own negligence. See *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088, 1093 (1999).

This court disagreed and reasoned as follows. As a joint tortfeasor, Kimball Hill could be held jointly and severally liable for all of the employee's damages. See *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 423 (1997). Such joint and several liability was Kimball Hill's "tort liability" even though a portion of that liability may have been attributable to the insured's negligence. *Michael Nicholas*, 321 Ill. App. 3d at 914. The insured's contribution liability arising from an injury to its employee typically would be limited to the amount of its workers' compensation liability. *Kotecki*, 146 Ill. 2d at 165. However, by agreeing to indemnify Kimball Hill, the insured waived its *Kotecki* cap. See *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 217-18 (1997). As a result, the insured was potentially liable for the entire amount that Kimball Hill would be required to pay the insured's employee. Thus, under the indemnity agreement, the insured agreed to assume the tort liability of Kimball Hill. *Michael Nicholas*, 321 Ill. App. 3d at 914.

We noted that nothing in the policy required that "tort liability" be limited to "negligence liability." If the insurer wanted to limit the definition of an insured contract to the situation where one party agrees to assume liability for another party's negligence, it could have plainly said so. By using the term "tort liability," the insurer left open the possibility that its insured could agree to be responsible for another party's liability in a tort action even though that liability was not based on the other party's own negligence. *Michael Nicholas*, 321 Ill. App. 3d at 914.

■ This court concluded that the definition of "insured contract" was ambiguous and therefore would be construed liberally in favor of coverage. In so concluding, we reasoned that the insured was a construction contractor. Under the Construction Contract Indemnification for Negligence Act (Act) (740 ILCS 35/1 *et seq.* (West 2000)), any indemnification clause in a construction contract under which a person agrees to indemnify another against the other person's own negligence is against public policy and void. We stated that, if the insurer's interpretation applied, it would be difficult to envision any situation in the insured's line of work where the "insured contract" exception would apply. *Michael Nicholas*, 321 Ill. App. 3d at 914-15.

We see no reason to depart from *Michael Nicholas*. As the discussion of *Michael Nicholas* reveals, a party's tort liability is not neces-

sarily based on that party's own negligence. See also *O'Banner v. Mc-Donald's Corp.*, 173 Ill. 2d 208, 213 (1996) (discussing vicarious liability); *Carroll v. Faust*, 311 Ill. App. 3d 679, 691 (2000) (discussing strict liability). Plaintiff continues to insist that in a contribution action any liability passed along to the employer is the liability of the employer itself and not the liability of another person. Plaintiff is correct that contribution apportions liability on the basis of fault. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 118 (1992). There is nothing in the policy, however, stating that the "insured contract" exception applies only when the insured agrees to assume liability greater than its percentage of fault. Here, if defendant's *Kotecki* cap is lower than the amount of Weeks's damages that is attributable to defendant's negligence, then, under principles of joint and several liability, Wegman can be held liable *in tort* for the difference. Relying on the indemnification clause, Wegman attempted to recover that amount. If defendant has waived its *Kotecki* cap, then it has assumed tort liability that otherwise would have been imposed against Wegman.

■ Plaintiff urges an interpretation that is more narrow than what the policy language suggests. Plaintiff argues that an insured who waives the *Kotecki* cap is merely waiving an affirmative defense and is not assuming any tort liability that did not already exist. Plaintiff raises only a technical distinction, however, that does not change the analysis. Indemnification clauses like the one at issue here are intended to shift tort liability that otherwise would be imposed against the indemnitee. See *Roberts v. Robert V. Rohrman, Inc.*, 909 F. Supp. 545, 553 (N.D. Ill. 1995) ("indemnity" pertains to liability for loss shifted from one person held legally responsible to another person).

■ During the oral argument, plaintiff correctly observed that the "insured contract" exception is not devoid of benefit to an insured in the construction industry. For example, if defendant entered into a lease for office space, the Act would not apply and defendant could agree to indemnify the lessor against its own negligence. Plaintiff's observation does not warrant a departure from *Michael Nicholas*, however. When interpreting an insurance policy, the court must consider the type of insurance purchased, the types of risks involved, and the overall purpose of the contract. *Fuller's Car Wash, Inc. v. Liberty Mutual Insurance Co.*, 298 Ill. App. 3d 167, 170 (1998). As was the case in *Michael Nicholas*, the parties must have anticipated that most of defendant's contracts would involve construction. Thus, adopting plaintiff's interpretation would defeat defendant's reasonable expectations of coverage in those situations. *Michael Nicholas*, 321 Ill. App. 3d at 915.

■ Finally, plaintiff argues that *Michael Nicholas* interferes with the "dovetailing" coverage schemes of the CGL and the workers compensation/employers liability (WC/EL) policies. We disagree. Plaintiff is correct that, generally, the employee exclusion was designed to preclude coverage for losses normally covered by workers' compensation and that there is no reason to secure double coverage. *Brile v. Estate of Brile*, 296 Ill. App. 3d 661, 669 (1998). The employee exclusion in the CGL contains the "insured contract" exception, however. Therefore, the policy contemplates that some losses arising from an injury to an employee of the insured will be covered.

Moreover, it appears that *Michael Nicholas* actually is consistent with the interplay between the CGL and the WC/EL policies. The employers liability coverage part contains the following insuring agreement:

> "We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.
>
> The damages we will pay, where recovery is permitted by law, include damages:
>
> > 1. for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee."

■ The employers liability coverage excludes "liability assumed under a contract." It has recently been held that this exclusion is triggered when the insured waives the *Kotecki* cap. *Christy-Foltz, Inc. v. Safety Mutual Casualty Corp.*, 309 Ill. App. 3d 686, 693 (2000). Thus, in a situation like that present here, the "insured contract" exception in the CGL complements the employers liability coverage. For the same reasons we refuse to depart from *Michael Nicholas*, we decline plaintiff's invitation to reject *Christy-Foltz*. Accordingly, we are unpersuaded by plaintiff's claim that *Michael Nicholas* frustrates the underwriting intent expressed in the policies.

We note that the decisions plaintiff cites do not support its position. Those decisions did not involve the effect of an insured's waiver of the *Kotecki* cap and therefore do not provide any guidance here. See, *e.g.*, *United States Fire Insurance Co. v. Deering Management Group, Inc.*, 946 F. Supp. 1271, 1284 (N.D. Tex. 1996); *Hankins*, 305 Ill. App. 3d at 1093; *Midland Insurance Co. v. Bell Fuels, Inc.*, 159 Ill. App. 3d 780, 783 (1987). In several of the decisions, the "insured contract" exception was not even discussed. See *Unigard Insurance Co. v. Whitso, Inc.*, 195 Ill. App. 3d 740, 742-43 (1990); *Bell Fuels*, 159 Ill. App. 3d at 783-86; *Reliance Insurance Co. of Illinois v. Nick J. Gi-*

*annini, Inc.*, 158 Ill. App. 3d 657, 661-62 (1987); *Aetna Casualty & Surety Co. v. Beautiful Signs, Inc.*, 146 Ill. App. 3d 434, 436-37 (1986).

Plaintiff represents that the underlying litigation has settled and that defendant was not required to make any contribution beyond its *Kotecki* cap. According to plaintiff, whether defendant faces exposure beyond its workers' compensation lien is now moot. Even if we accept plaintiff's representation, it is irrelevant. The duty to defend is broader than the duty to indemnify and is determined by reference to the allegations in the underlying complaints, not the outcome of the underlying litigation.

To the extent that Wegman sought full contribution beyond defendant's *Kotecki* cap, there was a potential for coverage, and plaintiff owed defendant a duty to defend.

Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GROMETER, J., concurs.

JUSTICE McLAREN, dissenting:

I respectfully dissent. The majority erroneously concludes that the exception to the exclusion applies in this case, triggering coverage and a duty to defend. The majority comes to this conclusion believing that the doctrine of *stare decisis* requires such a result.

I recognize the importance of *stare decisis* upon our legal system. To maintain a uniform body of law and assure that the public may rely on our decisions, we must leave settled points of law undisturbed and may not abandon or modify earlier decisions of this court soon after their adoption. *People v. Delatorre*, 279 Ill. App. 3d 1014, 1020 (1996). However, the doctrine of *stare decisis* may not be so rigid as to require us "to veil the injustice resulting from a doctrine in need of reevaluation." *Alvis v. Ribar*, 85 Ill. 2d 1, 24 (1981). In this case, I believe there is good and sufficient cause to disavow and depart from *Michael Nicholas*. Initially, I note that *Michael Nicholas* itself was a departure from earlier precedent. See *Hankins v. Pekin Insurance Co.*, 305 Ill. App. 3d 1088 (1999). Although *Hankins* was decided by the Appellate Court, Fifth District, it is no less binding upon this appellate district. See *People v. Granados*, 172 Ill. 2d 358, 371 (1996) ("There is only one Illinois Appellate Court ***"). In light of this history and its erroneous reasoning, *Michael Nicholas* requires reevaluation. By following our previous decision in *Michael Nicholas*, the majority disregards prior precedent, continues a conflict between districts of the appellate court, and subverts logic and public policy.

As the discussion of *Michael Nicholas* reveals, a party's tort liability is not necessarily based on that party's own negligence. See also *O'Banner v. McDonald's Corp.*, 173 Ill. 2d 208, 213 (1996) (discussing vicarious liability); *Carroll v. Faust*, 311 Ill. App. 3d 679, 691 (2000) (discussing strict liability). However, the analysis contained in *Michael Nicholas* characterizes aspects of tort liability that are *preexisting and imposed by operation of law*, as being assumed under the terms of the indemnification contract in question. The major deficiency with both the majority and *Michael Nicholas* decisions is that they ignore the distinction between those matters that are imposed by law and those that have been assumed by the insured through the indemnification contract. The joint and several liability analysis in *Michael Nicholas* presumes that the insured assumed the joint and several liability of all the joint and several tortfeasors. There is no such language in the indemnification contract, and one would not expect such a discussion relating to a preexisting duty imposed by operation of law. Joint and several liability is not assumed by a tortfeasor; if it were, it could be disclaimed or avoided by mere iteration. The aspects of tort liability as discussed by *Michael Nicholas* are red herrings because they are imposed rather than assumed and they are neither contained in nor contemplated by the indemnification contract or the insurance policy.

*Michael Nicholas* not only fails to address what is or is not assumed under the indemnification contract, but also fails to discuss the nature and extent of such an assumption. Assuming *arguendo* joint and several liability was assumed, then it would mean that the nonemployer/indemnitee would be able to obtain total satisfaction of the judgment entered in the original cause in violation of the Construction Contract Indemnification for Negligence Act (the Act) (740 ILCS 35/1 *et seq.* (West 2000)). Additionally, it would constitute a waiver of all the immunities provided to an employer/indemnitor pursuant to the Workers' Compensation Act. See 820 ILCS 305/11 (West 2000); *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 165 (1991). The principle that tortfeasors who are held jointly and severally liable are each fully responsible for the entirety of the plaintiff's injury has been explained:

> " 'Joint and several liability only applies to injuries for which the defendant herself is fully responsible. She is responsible for the entirety of some injury only if her tortious behavior was an actual and proximate cause of the entire injury.' " (Emphasis omitted.) *Best v. Taylor Machine Works*, 179 Ill. 2d 367, 428 (1997), quoting R. Wright, *The Logic and Fairness of Joint and Several Liability*, 23 Memphis St. U.L. Rev. 45, 54-56 (1992).

The fact that the parties are construction companies does not

mean, *ipso facto*, as determined by *Michael Nicholas*, that the parties must have intended something that makes the definition declared in *Hankins* ambiguous. The majority correctly recites and then misapplies the well-settled principle that a term is ambiguous only if it is susceptible to at least two *reasonable* interpretations. 337 Ill. App. 3d at 704. Both the majority and *Michael Nicholas* assert that it is reasonable to interpret the indemnification contract as declaring that the employer/indemnitor assumed the tort liability of the nonemployer/indemnitee. In light of the Act's prohibition against indemnification in this context, this interpretation is not reasonable. An interpretation that violates a statute cannot be considered reasonable. See *Swavely v. Freeway Ford Truck Sales, Inc.*, 298 Ill. App. 3d 969, 976 (1998) ("There is no exception to the rule that a contract that violates a valid statute is void, as the law cannot enforce a contract which it prohibits").

Further, parties are assumed to know the law. The fact that this exception to an exclusion may not apply in some or most instances does not mean it can never apply. During oral argument, the employer/indemnitor correctly observed that the "insured contract" exception is not devoid of benefit to an insured in the construction industry. For example, if the employer/indemnitor entered into a lease for office space, the Act would not apply and the employer/indemnitor/lessee could agree to indemnify the lessor against its own negligence, *i.e.*, to assume the lessor's tort liability. When interpreting an insurance policy, the court must consider the type of insurance purchased, the types of risks involved, and the overall purpose of the contract. *Fuller's Car Wash, Inc. v. Liberty Mutual Insurance Co.*, 298 Ill. App. 3d 167, 170 (1998). However, we may not interpret a contract so as to violate public policy or statutory law as was the case in *Michael Nicholas*. See *State Farm Mutual Automobile Insurance Co. v. Collins*, 258 Ill. App. 3d 1, 3 (1994). The fact that the parties anticipated that most of the employer/indemnitor's contracts would involve construction does not alter that proscription. Adopting the *Michael Nicholas* interpretation would sanction an interpretation that is against public policy as expressed in the Act. Contract provisions that are void as against public policy are unenforceable and have no legal effect. *Swavely*, 298 Ill. App. 3d at 976. This court is constrained to interpret the language of the contract in such a way that is deemed reasonable and consistent with established law and public policy. See *Collins*, 258 Ill. App. 3d at 3. Thus, *Michael Nicholas* improperly creates an ambiguity by constructing an unreasonable interpretation of "insured contract" and improperly presuming an assumption of a liability imposed by law.

*Michael Nicholas* fails to address the paradox that one cannot as-

sume a preexisting duty. Had it addressed the paradox, it would have realized the illusory distinction made to create the ambiguity it found to exist. See *Johnson v. Maki & Associates, Inc.*, 289 Ill. App. 3d 1023 (1997). The preexisting duty rule states that there is no consideration where a party does what it is already legally obligated to do. *Johnson*, 289 Ill. App. 3d at 1028. The majority and *Michael Nicholas* both equate a preexisting duty with one assumed under a contract and then use this invalid premise as a basis for their conclusion that there is coverage under the contract.

    *Michael Nicholas* also found an assumption of tort liability by the insured's waiver of the *Kotecki* cap. In this case, the employer/indemnitor argues that an insured who waives the *Kotecki* cap is merely waiving an affirmative defense and is not assuming any tort liability that did not already exist in its own *pro rata* share of negligence liability. I agree. The waiver of the *Kotecki* cap is a *waiver of a right* to a credit or offset that is provided by law and would reduce the amount of money due from the insured. See *Kotecki*, 146 Ill. 2d at 165. Neither reducing nor increasing the out-of-pocket expense of the employer/indemnitor means that the proportionate shares of liability have been altered. The *pro rata* share of the employer/indemnitor remains intact as does the *pro rata* share of the nonemployer/indemnitee. Were the employer/indemnitor to actually agree to alter and enlarge its *pro rata* share, it would then be agreeing to indemnify the other party for a portion of its negligence. Again, such an agreement is against public policy as expressed in the Act (740 ILCS 35/1 *et seq.* (West 2000)), something that *Michael Nicholas* failed to recognize. Although the relationship between the insured/employer/indemnitor and the insurer in *Christy-Foltz, Inc. v. Safety Mutual Casualty Corp.*, 309 Ill. App. 3d 686, 693 (2000), is different from that in the case at bar, the *Christy-Foltz* court determined that the *Kotecki* cap waiver was a waiver of a right and not an assumption of another party's liability. The *Christy-Foltz* court explained:

> "In agreeing to waive the right to invoke *Kotecki* as an affirmative defense, the plaintiff voluntarily assumed contribution liability in excess of the liability limitations provided to employers *under the Compensation Act*." (Emphasis added.) *Christy-Foltz*, 309 Ill. App. 3d at 693.

*Christy-Foltz* does not mention liability limitations under joint and several liability or *pro rata* shares that determine contribution. The right to contribution in this context means that the *pro rata* share found by the trier of fact to apply to the parties would neither be affected nor increased beyond that *pro rata* share of the employer/indemnitor, *e.g.*, that a judgment of $100,000 for which the insured

was 40% liable would not be altered. With or without the *Kotecki* waiver, the insured would not have assumed liability in an amount greater than $40,000. The issue ought not be transmuted, as *Michael Nicholas* did, from the insured increasing his out-of-pocket loss to the insured assuming another party's liability in tort. Until the insured agrees to be liable for $40,001 or more of the judgment, there has not been an assumption of another party's tort liability. *Michael Nicholas* violates public policy because, if it is reasonable to interpret the indemnification contract to determine that the insured/employer/indemnitor may properly increase its *pro rata* share of the liability, then it must follow that the *pro rata* share of the nonemployer/indemnitee has decreased. That again is against public policy because it allows a party to be indemnified for its own negligence in violation of the Act.

The insurance policy at issue contains an exception to its exclusion for "insured contracts." The policy defines an "insured contract" as a contract "under which [the insured] *assume*[*s*] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization." (Emphasis added.)

I believe the only reasonable interpretation is that the employer/indemnitor agreed to indemnify the nonemployer/indemnitee for the employer/indemnitor's own negligence consistent with the prior precedent as determined in *Hankins*. There is nothing in the contract between the joint tortfeasors in this case that indicates to the contrary. Further, there is no language that indicates that each party agreed to forego the right of contribution, which might arguably reduce the other party's *pro rata* share. There is language that relates to the *Kotecki* cap, but such language does not affect the joint and several liability between the parties, nor does it alter the *pro rata* shares of liability of the parties. The indemnification contract does not state that any liability attached to the other party has been assumed by the insured. In the context of the contract language as interpreted by *Michael Nicholas*, the insured could only have assumed a duty to indemnify in violation of the Act.

Unless the contract entered into by the nonemployer/indemnitee and employer/indemnitor fits the definition of an insured contract, it would not and could not trigger coverage. There is nothing in the contract that plausibly assumes another's liability in tort. I believe that the *Michael Nicholas* analysis improperly created an ambiguity by determining that there was an assumption of a preexisting duty that when applied violated the Act.

I submit the following syllogism. Assuming that *Michael Nicholas* was correct and that tort liability was assumed, the contract provided

for indemnity. Such indemnity would have to be something other than a preexisting duty. If it is other than a preexisting duty, and it is a duty rather than a right or benefit, it must result in greater liability than would normally exist. The insured would be required to pay more than its *pro rata* share of negligence liability. That would result in the nonemployer/indemnitee receiving indemnification for its own negligence, which would be against public policy as expressed in the Act. Therefore, the particular contract (between the nonemployer/indemnitee and the employer/indemnitor) would be invalid and void because such a contract cannot legally exist within the strictures of the Act. See *Swavely*, 298 Ill. App. 3d at 976. It follows that such a contract cannot be the basis for the application of the exception clause in the insurance policy relating to such generic types of contracts and cannot trigger the exception clause relating to the exclusion. Because the exception to the exclusion does not apply, the exclusion applies, and there is no coverage and no duty to defend.

Finally, because the majority has reaffirmed *Michael Nicholas*, it must be applied to this cause upon remand. On remand, there appear to be two possible dispositions: either the trial court will enter a judgment that awards the nonemployer/indemnitee at least one dollar more than its percentage of negligence liability or it will not. The former disposition will be a violation of the Act. The latter disposition will prove that the employer/indemnitor never assumed the tort liability of the nonemployer/indemnitee and that the analysis in *Michael Nicholas* is a paradox.

I submit the majority has misapplied the principle of *stare decisis*, continued the conflict between the appellate districts, and reaffirmed a paradox, *i.e.*, coverage based upon an ambiguity created by an unreasonable interpretation violative of public policy. Thus, I must respectfully dissent.